663 P.2d 580

STATE of Arizona, Appellee,

v.

Sally Catherine LAWRENCE, Appellant.

No. 1 CA–CR 4883.

Court of Appeals of Arizona,
Division One, Department C.

Sept. 23, 1982.

Rehearing Denied Nov. 3, 1982.

Review Granted Dec. 7, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Feder Law Office, P.A. by Bruce Feder, Phoenix, for appellant.

## OPINION

HAIRE, Judge.

The issue in this appeal is whether Arizona's penal provisions establishing the crime of unlawful imprisonment may be applied to the factual circumstances of this case involving the confinement by appellant of her four year old daughter overnight in a rental storage locker. We hold that appellant's conviction must be reversed because the evidence will not support a conviction on the charge of unlawful imprisonment. Although appellant's conduct might well be characterized as reprehensible and deserving of severe condemnation, the imposition of criminal or other sanctions as a result of

that conduct must be found in other provisions of Arizona's criminal or juvenile code.[1]

The child's confinement in the storage locker was discovered at approximately 7:00 a.m. one morning when the manager of the mini-storage complex noticed that a locker rented to appellant was not properly secured. Upon investigating, he heard a child's voice coming from the inside, asking that the door be opened. After the lock was removed, appellant's four year old daughter was found inside the crowded five-by-fifteen-foot locker seated on rags and covered with a blanket with her jacket nearby. The locker had a foul smell due to the presence of decaying plants and a potty chair with excrement in it. No one could have had access to the locker since 9:00 p.m. the previous evening when the fenced locker area had been secured for the night. The child told the manager and an investigating officer that her mother and a man named "Dave" had placed her there. She was dirty and unkempt but was not ill and there was no evidence of physical impairment or injury. At about 9:00 p.m. on the day the child was discovered, appellant came to the storage locker complex and inquired about her daughter.

Appellant did not present any evidence at trial, but based her defense on the statement she had given to the police. She stated that on the previous evening she had gone to her locker with two friends, Mike and Bob, to rearrange some things in the locker. She had errands to run so the two friends agreed to keep the child. According to appellant, Mike and Bob had accidentally left the child behind in the locker. Appellant was unsure when she had last seen the child. She did not know where Mike and Bob lived.

During closing argument to the jury the state argued that since it appeared that appellant had all her possessions in the storage locker, including a potty chair for her daughter, it would not be unreasonable to believe that appellant and her daughter "were living out of this locker" and "that is why the defendant put [her daughter] in there overnight."

The jury returned a verdict of guilty to the charge of unlawful imprisonment. At sentencing the court treated the matter as a class one misdemeanor and sentenced appellant to three months imprisonment in the Maricopa County Jail. Appellant's sentence had been served before the briefing of this appeal had been completed for consideration by this court. Therefore, we can no longer grant appellant relief from that sentence. However, we can and must reverse the conviction, since we find the charge of unlawful imprisonment inapplicable to the facts of this case.

The crime of unlawful imprisonment is defined in A.R.S. § 13–1303(A), as follows:

"A. A person commits unlawful imprisonment by knowingly restraining another person."

The word "restrain" as used in § 13–1303(A) is defined in A.R.S. § 13–1301(2). Under that definition, there must be a showing that the defendant has restricted a person's movements in a manner which substantially interferes with that person's liberty. The restriction can consist of either moving such person from one place to another or by confining such person. In addition, the restriction of movement must be done without consent and without legal authority.[2]

1. Appellant was also charged with contributory dependency in violation of A.R.S. § 13–3613. A judgment of acquittal was entered on that charge before submission of the unlawful imprisonment charge to the jury.

2. At the time these events occurred, A.R.S. § 13–1301 provided:

"§ 13–1301. Definitions
"In this chapter, unless the context otherwise requires:

"1. 'Relative' means a parent or stepparent, ancestor, descendant, sibling, uncle or aunt, including an adoptive relative of the same degree through marriage or adoption, or a spouse.

"2. 'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with such person's liberty, by moving such person from one place to another or by confining such person. Restraint is without consent if it is accomplished by:

In the case under consideration there can be no question but that the locking of appellant's daughter in the storage locker overnight constituted a substantial interference with the child's liberty and thus a restriction of her movement by confinement. However, as indicated, restriction is not restraint within the meaning of our unlawful imprisonment statute unless that restriction of movement is both "without consent" and "without legal authority".

■ We consider first whether the confinement of a minor child by a parent having lawful custody of that child can ever be said to be a restraint "without legal authority". We initially recognize that the right of a parent to the custody and control of a minor child has long been recognized as fundamental. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Appeal in Pima County, Juvenile Action No. J–46735,* 112 Ariz. 170, 540 P.2d 642 (1975); *In re Appeal in Pima County, Juvenile Action No. S–111,* 25 Ariz.App. 380, 543 P.2d 809 (1975). However, this right is not absolute. Rather, it is limited by a standard of reasonableness. Thus, in *State v. Hunt,* 2 Ariz.App. 6, 406 P.2d 208 (1965), Division 2 of this court considered the question of a parent's right to use physical force in the control and discipline of a child, and applied a test of reasonableness, stating:

"One cannot expound an inflexible rule which would define what, under all conditions, would be reasonable or excessive force in the disciplining of a child. As children vary in degrees of sensitivity, responsibility and other qualities of character, as well as tolerance to pain, age, sex and physical condition, so must the degree of parental severity vary, especially when balanced against the gravity of the particular offense for which punishment is to be meted out. An error in parental judgment should not as a matter of law brand the act as unreasonable." 2 Ariz.App. at 20, 406 P.2d at 222.

■ We can see no reason why a similar standard of reasonableness should not be applicable in determining whether a parent's confinement of a child falls within the bounds of the parent's legal authority to exercise control and custody over the child. Such was the case at common law. Thus in *Fletcher v. People,* 52 Ill. 395 (1869), the court in considering a charge of false imprisonment against a parent upheld the conviction, stating:

"Counsel urge, that the law gives parents a large discretion in the exercise of authority over their children. This is true, but this authority must be exercised within the bounds of reason and humanity. If the parent commits wanton and needless cruelty upon his child, either by imprisonment of this character or by inhuman beating, the law will punish him." 52 Ill. at 397.

*See generally* 35 C.J.S. False Imprisonment, §§ 19, 71 (1960 and Supp.1982). We therefore hold that under appropriate factual circumstances and governed by an appropriate instruction on the law, a jury might find that a parent did not have legal authority to confine his or her child because of the manner and nature of the confinement imposed.[3]

■ We consider next the requirement that in order to constitute unlawful imprisonment, the confinement must also be "without consent". A.R.S. § 13–1301(2) provides, in part, as follows:

"(a) Physical force, intimidation or deception; or

"(b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement."

---

**3.** In Gerber, Criminal Law of Arizona, at p. 183, the statement is made that "whether a restraint is without legal authority is a matter of law to be decided by the court and not the jury. If the court determines that the restraint was with legal authority, there will be a directed verdict of acquittal. If the court determines that the restraint was without legal authority, no question will be presented to the jury on this issue." While the principle stated might have general validity, it would not be applicable to situations where the existence or nonexistence of legal authority is dependent upon the reasonable or unreasonable nature of the confinement, as in this case.

"Restraint is without consent if it is accomplished by:

"(a) Physical force, intimidation or deception; or

"(b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement."

It is apparent from A.R.S. § 13–1301(2)(b) that in the case of a child less than 18 years old or an incompetent person, the question of whether physical force, intimidation or deception has been used is immaterial. As stated by Gerber, "The key to lack of consent [in cases involving a child or incompetent person] is not the means of restraint but the lack of acquiescence by the lawful custodian." Gerber, Criminal Law of Arizona 183 (1978). The comments of the Arizona Criminal Code Commission concerning this proposed statutory provision appear to be in accord. *See* Arizona Criminal Code Commission, Arizona Revised Criminal Code 142 (1975).

■ At first blush it would seem that a custodial parent could always acquiesce in his or her own actions and thus a parent's own actions would never meet the "without consent" element required for the crime of unlawful imprisonment. However, we must consider whether a parent may acquiesce in the confinement where the confinement is unreasonable and therefore unlawful. We hold that a custodial parent may not acquiesce in or consent to his own wrongdoing. Therefore, the question of whether the restraint by a custodial parent is "without consent" turns on whether the restraint is lawful, i.e., reasonable. Since this is the same standard for determining whether the restraint is "without lawful

authority", the question of consent becomes immaterial when the defendant is the victim's lawful custodian.

■ We therefore conclude that a parent having lawful custody of a child may, under appropriate circumstances, be held to have committed the crime of unlawful imprisonment in violation of A.R.S. § 13–1303(A). Further support for this conclusion can be found in A.R.S. § 13–1303(B)(2), which provides:

"B. In any prosecution for unlawful imprisonment, it is a defense that:

\*  \*  \*  \*  \*  \*

"2. The defendant is a relative of the person restrained and the defendant's sole intent is to assume lawful custody of that person and the restraint was accomplished without physical injury."

By definition a parent is a "relative" within the meaning of this defense. *See* A.R.S. § 13–1301(1). It would have been unnecessary for the legislature to provide a parent intending to exercise lawful custody rights with a limited defense to a charge of unlawful imprisonment unless it was intended that the conduct of such a parent might conceivably fall within the purview of the statutory definition of that crime.

We next consider whether the defense set forth in A.R.S. § 13–1303(B)(2) is applicable to the facts of this case. For analysis purposes, we note that the defense has three elements. First, the defendant must be a relative of the person restrained. Appellant as the parent of the alleged victim clearly met this requirement.[4]

■ Second, there must be a showing that the defendant's sole intent was to assume lawful custody of the person restrained.[5] Here the focus is upon the intent

---

4. The state, in its answering brief on appeal, for the first time in this prosecution, questions whether appellant was in fact the mother of the victim. In our review of the record we find that both the state, through the testimony of its witnesses, and the court, through its own statements, repeatedly alleged and admitted the mother-child relationship, both in the presence of the jury and in other proceedings. We

therefore refuse to give further consideration to the state's argument on this point.

5. We do not interpret the word "assume" as being limited to those circumstances in which the defendant intends to exercise lawful custody rights by taking *physical* custody from another party. The statutory language does not contain such a limitation. Rather, we interpret the word "assume" as applying to all situations

of the defendant, and not upon whether the resulting restraint or confinement was actually lawful or unlawful. The intent, however, must be to assume *lawful* custody, and thus the defense would not be available to a defendant who has acted with knowledge that he or she did not have the right to lawful custody. Here, to the extent that the evidence shows a knowing confinement of the child by appellant, and, considering the evidence in a light most strongly in favor of the state, the evidence is all to the effect that appellant's sole intent was to assume and exercise her lawful custody rights as a parent in placing the child in the storage locker for the night. In fact, the state in its closing argument urged that the reason appellant left the child in the locker overnight was because appellant and the child "were living out of this locker."

■ The third element of the defense afforded to a relative is that the restraint (here by confinement) be accomplished without physical injury. which is defined in A.R.S. § 13–105(24) as "impairment of physical condition." While we have previously held in this opinion that the facts pertaining to the confinement of the child were of such a nature that the jury could have found the confinement unreasonable and thus beyond the legal authority to confine inherent in the lawful custody rights of a parent, the evidence affirmatively establishes that the child suffered no physical injury or impairment as a result of that confinement.

■ We hold that the uncontroverted evidence established the applicability of the defense outlined in A.R.S. § 13–1303(B)(2). In so holding we recognize that, as a practical matter, our interpretation of A.R.S. § 13–1303(B)(2) makes that defense available to any parent charged with unlawful imprisonment of his or her child where the parent has acted in good faith and the child has not suffered physical

injury from the restraint. We see no reason why the defense should be available to a parent, who, in taking physical custody from another, restrains the child, but not available to a parent, who, already having physical custody, exercises the same restraint over the child.

We conclude that the trial judge committed error in denying appellant's motion for a judgment of acquittal on the unlawful imprisonment charge. *See* Rule 20, Rules of Criminal Procedure, 17 A.R.S.

The judgment and sentence are reversed.

EUBANK, J., concurs.

FROEB, Judge, specially concurring:

I concur with the majority that the conviction of the appellant of a violation of A.R.S. § 13–1303(A) must be reversed but for a different reason.

In my opinion, the referred to unlawful imprisonment statute does not provide a criminal sanction against a parent based upon the place where his or her child may be housed or confined. To the extent that a child may be endangered by his or her physical surroundings, another criminal statute, A.R.S. § 13–3619, provides a criminal sanction applicable to a parent under such circumstances. In any event, I agree with the observation in the majority opinion which condemns as reprehensible the conduct underlying the present case.

My view is based entirely on the plain language of A.R.S. §§ 13–1303(A) and 13–1301(2). The former reads, "A person commits unlawful imprisonment by knowingly restraining another person." A.R.S. § 13–1301(2) states in part: " 'Restrain' means to restrict a person's movements without consent *and without legal authority* ...." (emphasis added).

The phrase "without legal authority" is the controlling concept for this case. In my opinion, the phrase refers to the relation-

in which the intent of the defendant is to undertake or exercise lawful custody rights over another person. Contrary to the position stated in the special concurrence, the defense set forth in A.R.S. § 13–1303(B)(2) was not intended to

be limited to situations involving child custody violations in marital dissolution situations. The "custodial interference" provisions of A.R.S. § 13–1302 appear to be more directly pertinent to such child custody matters.

**594**

ship between the person restraining and the person restrained. Contrary to the majority, I do not believe that the existence of "legal authority" depends upon the "reasonableness" of the restraint. Since "reasonableness" is a factual question to be resolved by a trier of fact, the determination of what is or is not a reasonable restraint would be left to jury determination in each case without any standard by which to be guided. I do not believe this is what the legislature intended in using the phrase "without legal authority." To the contrary, the phrase seems clearly to suggest that where a legal status exists which ordinarily will entail control or discipline, such as that of parent and child, the crime of unlawful imprisonment is inapplicable. This view appears to be consistent with the statement in Gerber, *Criminal Law of Arizona*, p. 183 (quoted in the majority opinion), that "whether a restraint is without legal authority is a matter of law to be decided by the court and not the jury. If the court determines that the restraint was with legal authority, there will be a directed verdict of acquittal. If the court determines that the restraint was without legal authority, no question will be presented to the jury on this issue."

For the reasons stated, I disagree with the majority conclusion that "a parent having lawful custody of a child may, under appropriate circumstances, be held to have committed the crime of unlawful imprisonment in violation of A.R.S. § 13–1303(A)." There are criminal sanctions and civil actions available in Arizona for the protection of children against the custodial parent. In my view, unlawful imprisonment under A.R.S. § 13–1303(A) is not one of them.

Assuming, however, that the majority view of A.R.S. § 13–1303(A) is correct, I am unable to agree that a defense under A.R.S. § 13–1303(B)(2) has been shown. In this posture, I would disagree with the majority holding that the judgment of acquittal should have been granted.

A.R.S. § 13–1303(B)(2) provides that it is a defense that:

The defendant is a relative of the person restrained *and the defendant's sole intent is to assume lawful custody* of that person and the restraint was accomplished without physical injury. (Emphasis added).

In my opinion the plain wording of this provision is to give one not having *present* custody a defense if the physical restraint over the "victim" occurs where the defendant undertakes action to gain or acquire lawful physical custody. This appears to be directed at child custody situations arising from marriage dissolution. In any event, there is nothing in the present case to indicate that appellant's sole intent was "to assume lawful custody." On the contrary, she already had lawful custody, or so it appears. Therefore, I disagree that the defense has been shown and if the majority's interpretation of A.R.S. § 13–1303(A) were correct, I would affirm the conviction.