663 P.2d 561

STATE of Arizona, Appellee,

v.

Sally Catherine LAWRENCE, Appellant.

No. 5710–PR.

Supreme Court of Arizona,
En Banc.

April 11, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Feder Law Office, P.A. by Bruce Feder, Phoenix, for appellant.

HAYS, Justice.

After a jury trial in Maricopa County Superior Court, Sally Catherine Lawrence was convicted of one count of unlawful imprisonment and sentenced to three months incarceration at the Maricopa County Jail.[1] The Court of Appeals reversed appellant Lawrence's conviction in an opinion filed September 23, 1982 and the State of Arizona filed a timely petition for review after the Court of Appeals denied the state's motion for rehearing.

We accepted jurisdiction of this matter pursuant to A.R.S. § 12–120.24 and Rule 31.19, Rules of Criminal Procedure, 17 A.R.S., because we believe that this case requires us to construe A.R.S. § 13–1303, the statute under which Lawrence was prosecuted and convicted. We reverse appellant's conviction of unlawful imprisonment, but we vacate the opinion of the Court of Appeals. Although the ultimate result is the same, our analysis of the unlawful imprisonment statute differs from the view expressed by the majority of the Court of Appeals.

This court agrees with the Court of Appeals' statement that the issue before us is whether Arizona's penal provisions establishing the crime of unlawful imprisonment may be applied to the factual circumstances of this case where the accused, the victim's custodial parent, confined her four-year-old daughter overnight in a rented storage locker. We hold that A.R.S. § 13–1303 cannot be so applied.

Before explaining our reasoning, we feel compelled to announce our agreement with the Court of Appeals that the circumstances in which this victim found herself were unfortunate and that the actions, or inaction, of the adult responsible for her plight "... might well be characterized as reprehensible...."[2] Nevertheless, appropriate criminal sanctions are provided in Title 13, Arizona Revised Statutes, outside of § 13–1303. This court believes that parents, le-

1. Appellant served this sentence before the Court of Appeals considered her case. Therefore, we can grant no relief from that sentence.

2. *State v. Lawrence*, 663 P.2d 580 (Ariz.App. 1982).

gal guardians and prosecutors are, and should be, aware of these penalties. Recognition and utilization of the wisdom found in our criminal code can protect the children of our state without imposing a conviction which the legislature did not intend.

The facts of this case are these. The victim was discovered in the storage locker in Tempe, Arizona at approximately 7:00 one morning when the manager of the storage yard noticed that a locker adjacent to the one rented by appellant was not properly secured. Upon investigating, she heard a child's voice coming from inside the next locker, asking that the door be opened. After the lock was removed, appellant's four-year-old daughter, Sommer Lawrence, was found inside the crowded five-by-fifteen-foot locker seated on rags, covered with a blanket and with her jacket nearby. The locker had a foul smell due to the presence of decaying plants and a potty chair with excrement in it. No one could have had access to the locker since 9:00 p.m. the previous day when the fenced locker area had been secured for the night.

The child told the manager and an investigating officer first, that a man named Dave, and then that her mother had put her in the locker. She was dirty and unkempt but was not ill and there was no evidence of physical impairment or injury. At about 8:30 p.m. on the day the child was discovered, appellant came to the storage locker complex looking for her daughter.

At trial, Lawrence's defense relied on the statement she gave to police when she first inquired about her daughter at the locker complex. This statement came in through the state's witnesses and Lawrence rested without presenting any evidence. Briefly,

appellant's version of events was that she had gone to the storage lockers on the previous evening with two friends, Mike and Bob, to rearrange the locker's contents. Mike and Bob had agreed to keep Sommer with them when Lawrence left to run some errands, and it must have been their inattention, according to appellant, which resulted in Sommer's being shut up inside the storage locker. There is some indication from appellant's discussion with the investigating officers, that Lawrence was unsure when she had last seen the child. She did not know where Mike and Bob lived.

During closing argument the state argued that, since it appeared appellant had all her possessions in the storage locker including a potty chair for her daughter, it would not be unreasonable to believe that appellant and her daughter were using the locker as their only residence.

Arizona's unlawful imprisonment statute defines the offense in one sentence: "A person commits unlawful imprisonment by knowingly restraining another person." A.R.S. § 13–1303(A).

The word "restrain," as used in § 13–1303(A), is defined in A.R.S. § 13–1301(2). Under that definition, there must be a showing that the defendant has restricted the victim's movement in a manner which substantially interferes with that person's liberty. The restraint can be imposed by either moving the victim from one place to another or by confining the victim. Additionally, the restraint must be done without consent and without legal authority.[3]

The record in this case makes it clear that the victim experienced a substantial interference with her liberty and, thus, a restric-

**3.** At the time these events occurred, A.R.S. § 13–1301 provided:

"In this chapter, unless the context otherwise requires:

"1. 'Relative' means a parent or stepparent, ancestor, descendant, sibling, uncle or aunt, including an adoptive relative of the same degree through marriage or adoption, or a spouse.

"2. 'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes

substantially with such person's liberty, by moving such person from one place to another or by confining such person. Restraint is without consent if it is accomplished by:

"(a) Physical force, intimidation or deception; or

"(b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement."

tion of her movement by confinement. However, A.R.S. § 13–1301(2) makes it clear that the restraint which § 13–1303 proscribes is one accomplished without consent and without legal authority.

We believe, as did Judge Froeb in his special concurrence with the Court of Appeals majority, that the legislative intent in using the phrase "without legal authority" was to render A.R.S. § 13–1303 inapplicable to the facts at bar because of the defendant's status with respect to the victim.[4] The following language from that special concurrence expresses our view and we adopt it:

> "The phrase 'without legal authority' is the controlling concept for this case. In my opinion, the phrase refers to the relationship between the person restraining and the person restrained. Contrary to the majority, I do not believe that the existence of 'legal authority' depends upon the 'reasonableness' of the restraint. Since 'reasonableness' is a factual question to be resolved by a trier of fact, the determination of what is or is not a reasonable restraint would be left to jury determination in each case without any standard by which to be guided. I do not believe this is what the legislature intended in using the phrase 'without legal authority.' To the contrary, the phrase seems clearly to suggest that where a legal status exists which ordinarily will entail control or discipline, such as that of parent and child, the crime of unlawful imprisonment is inapplicable."

*State v. Lawrence, supra,* at 585–586.

Our analysis is based, as was Judge Froeb's, on the plain wording of A.R.S. §§ 13–1301(2) and 13–1303. A further indication of the legislature's intent is found in A.R.S. § 13–1303(B)(1) and (2) which provide defenses for law officers performing their duty and for relatives who act to *assume* lawful custody. The legislature's failure to provide a defense for actions un-

dertaken to *exercise* custody rights indicates to this court that A.R.S. § 13–1303(A) does not apply to such conduct since it is patent that no defense is necessary for individuals who are not exposed to prosecution under that statute.

Finally, we cannot believe our legislature intended to condemn a parent's confinement of his or her child in their only residence (as the state argued to the jury) as felonious unlawful imprisonment regardless of how ill-advised the confinement or how unfit the residence.

Accordingly, we hold that it was error for the trial court to deny defendant's motion to dismiss urging the inapplicability of this statute to these facts, and we remand to the trial court for the entry of an order dismissing Count I of the information.

HOLOHAN, C.J., and FELDMAN, J., concur.

CAMERON, Justice, dissenting.

Because I disagree that a parent is immune from prosecution for unreasonably confining his or her child, I dissent.

I do not dispute a parent or guardian's right to apply appropriate force on a child in order to maintain discipline and control. This right is not absolute, however, but rather is limited by a standard of reasonableness. The rule of absolute immunity from prosecution for parents who use excessive force on their children was rejected in *State v. Hunt,* 2 Ariz.App. 6, 406 P.2d 208 (1965), in the context of a charge of assault and battery of a young daughter. The court stated,

> The gravamen of the battery charge herein was whether the parents of Tina had used an amount of punishment on Tina in excess of that amount allowed by the law under the circumstances. Corporal punishment of a child by its parent is not prohibited by law in this state but the use of immoderate or excessive physical violence against a child by a parent for

4. This construction has the advantage of creating a clear-cut issue of law rather than a thorny

factual question of reasonableness.

572

correction or discipline purposes is an aggravated assault and battery. Id. at 20, 406 P.2d at 222.

The court reasoned, "One cannot expound an inflexible rule which would define what, under all conditions, would be reasonable or excessive force * * *," and explicitly adopted a test of reasonableness. Id. *See also State v. Hunt,* 12 Ariz.App. 418, 471 P.2d 303 (1970) (on retrial, Mrs. Hunt was convicted of aggravated assault and battery for using unreasonable force on her child). Like the Court of Appeals in the instant case, I see no reason why the same standard of reasonableness should not apply in determining whether a parent's confinement of a child falls within the bounds of the parent's legal authority to exercise control and custody.

The majority cites no authority to support its conclusion that a parent is immune from prosecution for unlawfully confining its child. The majority bases its opinion on the supposed intent of the legislature. The court relies on the words "without legal authority," which is explicitly stated in the unlawful imprisonment statute, A.R.S. § 13–1301 (incorporated by reference into § 13–1303), and is an implicit requirement of the assault statutes, A.R.S. §§ 13–1203–1206. I do not believe that the legislature intended the "legal authority" of a parent to be construed as absolute. I believe the intent of the legislature is well demonstrated in A.R.S. § 13–403, which adopts a standard of reasonableness in defining the statutory defense of justification for a parent's use of force on a child:

§ 13–403 Justification; use of physical force

The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

1. A parent or guardian * * * or other person entrusted with the care and supervision of a minor * * * may use *reasonable and appropriate* physical force upon the minor * * * when and to the extent *reasonably necessary and appropriate* to maintain discipline. (Emphasis added.)

It would be strange indeed for the legislature to adopt a standard of reasonableness for parents in maintaining discipline over their children, and yet to intend that parents have absolute legal authority to confine their children as a means of discipline.

Another problem with a statutory construction which interprets the words "legal authority" in A.R.S. § 13–1301 as granting absolute immunity to parents and guardians from prosecution for unlawful imprisonment is that it would render the specific statutory defense of A.R.S. § 13–1303(B)(2) superfluous. If parents or other persons entitled to legal custody were intended to have absolute immunity from prosecution for unlawful imprisonment through A.R.S. § 13–1301, the legislature would not have needed to create a specific statutory defense for these persons in the situations in which the child is restrained to obtain lawful physical custody.

I agree with the Court of Appeals that a parent is not per se immune from prosecution for unlawful imprisonment, but rather is subject to a standard of reasonableness. Because a parent's legal authority to confine a child is subject to a standard of reasonableness under the law of Arizona, *see State v. Hunt,* supra, and A.R.S. § 13–403, supra, the statutory defense of A.R.S. § 13–1303(B)(2) is inapplicable. A jury could reasonably find the defendant's conduct in locking her child in a storage locker for an extended period fell below the reasonableness standard. I would affirm the conviction.

GORDON, Vice Chief Justice, concurring.

I concur in the dissent.