[No. 8079–6–II.   Division Two.   December 11, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DANNY
EDWARD TUITASI, *Appellant.*

*Brian J. Coyne* and *Miles, Way, Coyne & Tobin,* for
appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* for respondent.

PEARSON, J.*—The sole issue in this case is whether Danny Tuitasi's threat to take his own child, in order to coerce his estranged wife into engaging in sexual intercourse, constitutes a threat of kidnapping within the meaning of RCW 9A.44.010(5) (defining forcible compulsion). We hold such a threat constitutes a threat of kidnapping within the contemplation of this section. We therefore affirm the defendant's conviction for second degree rape.

Danny and Michelle Tuitasi were married in October 1981. Their daughter, Jenny, was born in April 1982. The Tuitasis separated on July 27, 1982, and filed dissolution papers a year later. During the year of separation, the Tuitasis did not reside together or have sexual relations.

At the time of the crime, Michelle and Jenny were living in a 2–bedroom apartment in Shelton, Washington. According to Michelle's testimony, the defendant knocked on her apartment door at 2:30 a.m. on July 26, 1983. When she answered the door, the defendant forced his way past her, searched the apartment, and threatened to kill Michelle, Jenny, and himself.

Around dawn, the defendant told Michelle that if she did not engage in sexual intercourse with him, he would take their daughter away and Michelle would never see her again. The defendant then forced her to the couch, held her down, and had sexual intercourse with her. Michelle testified that she submitted only because the defendant threatened to take their daughter.

Following a bench trial at which the defendant did not testify, the court found the defendant guilty of second degree rape. The court concluded that the forcible compulsion element of second degree rape was established by the defendant's threat to take his daughter in order to compel the victim to engage in sexual intercourse. The defendant now appeals his conviction.

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division Two.

On appeal, the defendant contends that it is legally impossible for a parent to kidnap his or her own child. According to the defendant, his threat to take his daughter did not constitute a threat of kidnapping, but rather a threat of custodial interference. Therefore, because a threat involving custodial interference does not constitute forcible compulsion within the meaning of RCW 9A.44.010(5), the defendant contends he cannot be convicted of second degree rape. We disagree.

When reviewing the sufficiency of evidence to support a conviction, an appellate court is to determine whether, when the evidence is viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). The essential elements of rape in the second degree are (1) engaging in sexual intercourse (2) with another person (3) by forcible compulsion. RCW 9A.44-.050(1)(a). In the present case, this court must determine whether any rational trier of fact could have found beyond a reasonable doubt the forcible compulsion element of second degree rape. Forcible compulsion is defined in RCW 9A.44.010(5), in pertinent part, as "a threat, express or implied, that places a person . . . in fear that she or he or another person will be *kidnapped* . . ." (Italics ours.)

The term kidnapped as used within the rape statute has been construed so as to encompass any degree of the offense provided for in the criminal code. *State v. Pawling*, 23 Wn. App. 226, 230–31, 597 P.2d 1367, *review denied*, 92 Wn.2d 1035 (1979). Therefore, the threat of being kidnapped may encompass either the threat of first or second degree kidnapping. The record in the present case indicates that a factual basis exists to establish a threat of second degree kidnapping. The essential elements of second degree kidnapping are as follows:

A person is guilty of kidnapping in the second degree if he intentionally *abducts* another person under circumstances not amounting to kidnapping in the first degree.

(Italics ours.) RCW 9A.40.030(1).

"Abduct" means to *restrain* a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force . . .

(Italics ours.) RCW 9A.40.010(2).

"Restrain" means to restrict a person's movements *without consent* and *without legal authority* in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force [or] intimidation . . .

(Italics ours.) RCW 9A.40.010(1).

██ Here the victim's testimony is by itself sufficient to establish a threat to kidnap under these sections. The defendant's threat was to take the child by force or intimidation and therefore "without consent". His threat clearly also involved a restriction on the child's liberty "without legal authority".

It is well recognized that each parent has an equal right to custody of the children. RCW 26.16.125. *See also State v. LaCaze,* 95 Wn.2d 760, 630 P.2d 436 (1981); *In re Hudson,* 13 Wn.2d 673, 693, 126 P.2d 765 (1942). A parent does not, however, have an equal right to custody of a child if that parent engages in misconduct affecting the child's well being. *LaCaze,* at 763. This is certainly true where, as here, a parent threatens to take the child with the sole intent to compel the other parent to engage in intercourse against her will. The statutory right to equal custody obviously does not give parents "legal authority" to engage in such conduct.

Therefore, we hold that a parent is acting "without legal authority" within the meaning of RCW 9A.40.010(1) when he or she threatens to take a child from the custodial parent by force in order to coerce the custodial parent to engage in sexual intercourse.

Moreover, such conduct is not contemplated within the

perimeters of custodial interference.[1] The defense to second degree kidnapping makes it clear that the existence of a familial relationship lessens the degree of crime only if the defendant acts without evil intent in taking the victim. RCW 9A.40.030(2) provides in relevant part:

> In any prosecution for kidnapping in the second degree, it is a defense if established by the defendant by a preponderance of the evidence that . . . the actor's *sole intent is to assume custody of that person.* . . .

(Italics ours.)

Therefore, if the actor has some other intent, such as to compel the victim to acquiesce to intercourse, as in this case, the familial relationship is not a defense to second degree kidnapping. First degree kidnapping necessarily includes some criminal intent other than assuming custody of the victim, so the familial relationship defense is not included within that statute. *See* RCW 9A.40.020. Consequently, in light of the overall statutory scheme, the offense of custodial interference cannot logically be applied if the defendant acts with a mental state that would bring him within the kidnapping statutes.

Accordingly, a rational trier of fact could have found that the defendant threatened to kidnap his daughter, thereby forcibly compelling the victim to have sexual intercourse.

We affirm the defendant's conviction for second degree rape.

HAMILTON and MORGAN, JJ. Pro Tem., concur.

---

[1]At the time of the incident and trial, custodial interference was encompassed in RCW 9A.40.050(1), which provided, in pertinent part: "A person is guilty of custodial interference if, knowing that he has no legal right to do so, he takes or entices from lawful custody any incompetent person or other person entrusted by authority of law to the custody of another person or institution." Subsequently, in 1984, RCW 9A.40.050(1) was repealed and reenacted to include custodial interference in the first and second degree. *See* RCW 9A.40.060, .070. Nevertheless, the intent embodied in the original legislation remains unchanged, *i.e.,* the intent to deny access to a child by a parent, guardian, institution, agency or other person having lawful right to physical custody.