788 P.2d 67

**STATE of Arizona, Appellee,**

v.

**Melquiades Seran VIRAMONTES, Appellant.**

**No. CR–89–0175–PR.**

Supreme Court of Arizona, En Banc.

Jan. 30, 1990.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Joseph T. Maziarz, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

CORCORAN, Justice.

■ We granted the state's petition for review to consider whether a father may be convicted of kidnapping his own child. Additionally, we address the issue raised in defendant's cross-petition for review whether, if the kidnapping conviction is viable, the court properly imposed consecutive sentences for kidnapping and child abuse. We hold that a father may properly be convicted of kidnapping his child. We also hold that, under the circumstances of this case, consecutive sentences for kidnapping and child abuse were not permissible.

*Facts*

On June 9, 1987, Melquiades Viramontes (defendant) was charged with 7 counts of sexual conduct with a minor, one count of kidnapping, and one count of child abuse. The indictments arose from defendant's sexual relations with his minor stepdaughter and subsequent abandonment of his infant child, the offspring of that illicit relationship.

Defendant initiated sexual relations with his 13–year–old stepdaughter in 1981. As a result, she gave birth to a child on April 19, 1983. To avoid his wife's discovery of the baby and exposure of his sexual relationship with his stepdaughter, defendant took the newborn child from its mother, placed it in a cardboard box, drove to a McDonald's restaurant, and abandoned the child in the parking lot. Defendant anonymously contacted the police regarding the infant's location. The police discovered the infant a short time afterward, but its parentage remained a mystery. The child therefore could not be returned to its natural mother and was placed in an adoptive home.

In 1987, defendant's stepdaughter disclosed their sexual relationship to her mother, who notified the police. Defendant was indicted, and on December 14, 1987, pleaded guilty to two counts of sexual conduct with a minor, one count of kidnapping, and one count of child abuse, all pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The remaining charges were dismissed pur-

suant to the plea agreement. The parties made no agreement as to sentencing, but the state recommended concurrent sentences for the kidnapping and child abuse convictions. The trial court accepted the plea agreement and imposed aggravated sentences of 12 years each on the two convictions for sexual conduct with a minor, 10 years on the kidnapping conviction, and 10 years on the child abuse charge. The court ordered *all* four sentences to run *consecutively* for a total of 44 years. Defendant timely appealed.

The court of appeals held that no factual basis existed for the guilty plea to kidnapping because defendant, as the father, was the child's lawful custodian. Kidnapping requires knowing restraint plus intent to commit a further act. A.R.S. § 13–1304(A). Restraint requires restriction of a person's movements with lack of consent and lack of legal authority. A.R.S. § 13–1301(2). Relying on *State v. Lawrence*, 135 Ariz. 569, 663 P.2d 561 (1983), the court of appeals found that because defendant was the child's father, the state could not establish an absence of legal authority. We disagree and conclude that the unusual circumstances of this case are readily distinguishable from those presented in *Lawrence.*

### Discussion

#### A.  Kidnapping

■ The court of appeals relied on our holding in *Lawrence* to support its conclusion that a father cannot kidnap his own child. Arizona's kidnapping statute requires that a defendant knowingly restrain another person with the intent to commit a further act. A.R.S. § 13–1304(A). The further act must be one of those enumerated in the statute:

1.  Hold the victim for ransom, as a shield or hostage; or

2.  Hold the victim for involuntary servitude; or

3.  Inflict death, physical injury or a sexual offense on the victim, *or to otherwise aid in the commission of a felony;* or

4.  Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person.

5.  Interfere with the performance of a governmental or political function.

6.  Seize or exercise control over any airplane, train, bus, ship, or other vehicle.

A.R.S. § 13–1304(A) (emphasis added).

The evidence shows that defendant intended to abandon the infant, protected only by a cardboard box, at a fast food restaurant. Abandonment of a child is child abuse, a felony under Arizona law. A.R.S. § 13–3623(A). Thus, the record establishes defendant's intent to commit a further act enumerated in the kidnapping statute. *See* A.R.S. § 13–1304(A)(3).

■ The crime of kidnapping also requires that defendant knowingly restrain the victim. Restrain is defined as follows:

"Restrain" means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person. Restraint is without consent if it is accomplished by:

(a) Physical force, intimidation, or deception; or

(b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement.

A.R.S. § 13–1301(2). When the victim is less than 18 years old or an incompetent person, the question whether physical force, intimidation, or deception has been used is immaterial. The key to establishing lack of consent is non-acquiescence by the lawful custodian. Thus, we must address whether a parent of a minor child can "acquiesce" to that child's movement or confinement by a person who intends to commit a felony upon the child.

■ The right of a parent to the custody and control of his or her minor child has long been recognized as fundamental. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Juvenile Ap-*

*peal J–46735*, 112 Ariz. 170, 540 P.2d 642 (1975); *Juvenile Appeal S–111*, 25 Ariz. App. 380, 543 P.2d 809 (1975). We assume without deciding, that as the undisputed natural father of the victim,[1] and in the absence of a court custody order to the contrary, defendant had at least a right to coequal custody of the infant with the child's mother. *See State v. Donahue*, 140 Ariz. 55, 57, 680 P.2d 191, 193 (App.1984).

We do not believe that a child's custodial parents may acquiesce in the restraint of the child for any of the purposes included in the kidnapping statute. We therefore hold that a lawful custodian's acquiescence to movement or confinement of a child for the purpose of their own or another's wrongdoing will not constitute the "consent" that would bar a kidnapping charge. Therefore, for purposes of establishing the elements of kidnapping, the question of consent involves whether defendant intended to commit one of the acts included in the kidnapping statute. When a defendant is the child's parent, the proper inquiry should be directed at the purpose of the restraint and the defendant's intent.

■ The court of appeals did not address the lack of consent element of restraint, but instead focused on defendant's "legal authority" to take the child because of his parental relationship to the victim. The court of appeals held that because defendant was the victim's parent, lack of legal authority could not be established as a matter of law, on the basis of the *Lawrence* decision.

The facts of this case, however, differ significantly from those in *Lawrence*. In *Lawrence*, the mother of the 4–year old victim was charged with unlawful imprisonment, which also requires the knowing restraint of another person. *See* A.R.S. § 13–1303(A). The "restraint," however, was to provide the child with shelter. *See Lawrence*, 135 Ariz. at 570, 663 P.2d at 562. The facts suggest that the mother

and child were using a storage locker as a home. *Id.* In this case, defendant's restraint of his child was for the felonious purpose of abandoning a newborn infant in a busy parking lot. In *Lawrence*, the mother had legal authority to provide shelter for her child. Abandonment of a child, however, is not legally authorized. We find that *Lawrence* is not controlling here, but is limited to its specific facts.

Most cases addressing the propriety of charging a parent with kidnapping arise in the context of custody battles between parents. *See* Annotation, *Kidnapping or Related Offense by Taking or Removing of Child by or Under Authority of Parent or One in Loco Parentis*, 20 A.L.R. 4th 823, 825–26 (1983). The general rule is that, absent a custody order, a parent cannot be charged with kidnapping. *Id.* at 828–29 and cases cited therein; *see also State v. McLaughlin*, 125 Ariz. 505, 507, 611 P.2d 92, 94 (1980) (child abduction); *State v. Kracker*, 123 Ariz. 294, 295, 599 P.2d 250, 251 (App.1979) (child stealing). However, the general rule cannot be applied to the facts of this case. The cases cited involve parents attempting to obtain exclusive possession of their children without intent to commit the unlawful acts enumerated in the kidnapping statute. The proper charge in such instances would be custodial interference. *See, e.g.*, A.R.S. § 13–1302.[2] This case, however, does not present a custody dispute. Defendant's purpose in taking the infant was to further the commission of a felony, not to establish custody or visitation rights. Defendant was motivated by a desire to rid himself of the infant, not by a desire to take exclusive possession of the child.

"Legal custody," a concept contained in domestic relations law, should not be confused with "legal authority," a defense to kidnapping under A.R.S. § 13–1301(2). Regardless of any custody rights defendant may have possessed over the infant, he

---

**1.** The child's parentage was not contested in these proceedings.

**2.** We note that under the provisions of our custodial interference statute, the mother is the sole "legal custodian" of a child born out of wedlock

"until paternity is established and custody is determined by a court." A.R.S. § 13–1302(B). We deal only with the crime of kidnapping, which involves no such statutory presumption.

cannot assert that he had legal authority to engage in the action that resulted in abandonment of the child, which constitutes child abuse. "Legal authority" implies that behavior is sanctioned by law. *State v. Epps*, 36 Or.App. 519, 585 P.2d 425 (1978) (addressing lack of legal authority requirement in Oregon's kidnapping statute). Parents have authority to reasonably and appropriately discipline their children. *See, e.g.,* A.R.S. § 13–403(1). However, parents do not have legal authority to subject their children to felonious acts. Although legal authority has not been defined by the legislature, under no imaginable circumstances could the legislature have intended that defendant's intent in taking the child to abandon it be legally authorized. Defendant's abandonment of a newborn child in a busy parking lot, protected only by a cardboard box, is not sanctioned by Arizona law.

The Washington Court of Appeals has stated that although married parents have a statutory equal right to custody of their children in that state, that right does not extend to situations in which the parent engages in misconduct affecting the child's well-being. *State v. Tuitasi*, 46 Wash.App. 206, 207, 729 P.2d 75, 77 (1986), citing *State v. LaCaze*, 95 Wash.2d 760, 763, 630 P.2d 436, 437 (1981) ("The statutory right to equal custody does not give parents 'legal authority' to engage in such conduct").

■ We conclude that the state properly charged defendant with kidnapping. Because he lacked legal authority to restrain the child for the purpose of abandonment, defendant was guilty of restraining the child. Custodial parents cannot "consent" to the restraint of their minor children for felonious purposes. Furthermore, parents do not have legal authority to subject their children to felonious acts. Both elements, lack of consent and lack of legal authority, are satisfied here to establish defendant's knowing restraint of the child with the intent to commit a further felonious act. Thus, defendant could be charged with kidnapping even though he is the child's father.

B. Sentencing

■ Defendant filed a cross-petition for review, challenging as improper the *consecutive* sentences he received on the kidnapping and child abuse convictions. Defendant asserts that he should have received concurrent sentences because these crimes constituted a single act not subject to double punishment pursuant to A.R.S. § 13–116.[3]

This court employs the identical elements test to determine whether a number of crimes constitute a single act, which requires concurrent sentences, or multiple acts, which allow consecutive sentences. *State v. Tinghitella*, 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971). In applying the identical elements test, the court first eliminates the evidence supporting the elements of one charge and then determines whether the remaining evidence supports the elements of the other charge. *State v. Vaughn*, 147 Ariz. 28, 30, 708 P.2d 453, 455 (1985). We have found the identical elements test difficult to apply in circumstances where kidnapping is merely incidental to an additionally charged crime. *See State v. Noble*, 152 Ariz. 284, 287 n. 2, 731 P.2d 1228, 1231 n. 2 (1987).

We recently addressed the questions raised in *Noble* and clarified the analysis for determining the propriety of consecutive sentences. *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989). After discussing the legal tests followed in Arizona and other states, we concluded:

[W]e will continue to apply *Tinghitella* and judge a defendant's eligibility for consecutive sentences by considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges.

---

**3.** The current version of the kidnapping statute, effective May 16, 1985, requires that a sentence for kidnapping a victim under 15 years of age "shall run consecutively to any other sentence imposed on the defendant...." However, because this provision was not in effect on the date of this offense, it does not apply to this defendant.

If the remaining evidence satisfies the elements of the other crimes, then consecutive sentences may be permissible under A.R.S. § 13-116. In applying this analytical framework, however, we will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*Gordon,* 161 Ariz. at 315, 778 P.2d at 1211.

The issue in *Gordon* was whether moving a victim a slight distance to facilitate commission of a further crime constituted a separate act that supported consecutive sentences. 161 Ariz. at 314, 778 P.2d at 1210. Applying the modified identical elements test, we held that in some instances consecutive sentences were not appropriate for kidnapping and the additionally charged crime where the entire transaction constituted a single act and the victim was not subjected to additional harm beyond that inherent in the ultimate crime. *Gordon,* 161 Ariz. at 315, 778 P.2d at 1211.

Kidnapping is often incidental to the commission of a more serious crime. Although the two crimes may be discrete, the ultimate crime often could not occur but for the kidnapping. Applying the *Gordon* analysis to our facts illustrates the solution to the problem raised in *Noble.*

In this case, when the evidence necessary to support the child abuse charge is eliminated, evidence necessary to support the kidnapping charge remains. The kidnapping charge requires proof that defendant restricted the baby's movement without consent and without legal authority by moving the infant from one place to another with the intent to abandon the child. Therefore, once defendant formed the intent to abandon the child, took the child from its mother, and started the trip to McDonald's, the crime of kidnapping was complete. Had he stopped prior to abandoning the child, he could nevertheless have been charged with kidnapping. After defendant followed through with his intent and actually abandoned the child, he could then be charged with child abuse. Thus, under the first part of the *Gordon* test, defendant would be eligible for consecutive sentences for kidnapping and child abuse.

The second inquiry under *Gordon* is whether, given the entire "transaction," it was factually impossible to commit the ultimate crime—child abuse—without committing the secondary crime—kidnapping. 161 Ariz. at 315, 778 P.2d at 1211. Child abuse and kidnapping may be discrete crimes under some circumstances, but, in this "transaction," defendant could not have committed child abuse by abandoning the infant in the parking lot without first kidnapping the child. Stated differently, the defendant's "restraint" of the child by moving it to McDonald's was necessary before defendant could commit child abuse by abandoning the infant. This consideration increases the likelihood that defendant committed a single act, which would require concurrent sentences. *See Gordon.*

The final step requires us to consider whether defendant's conduct in committing the kidnapping caused the victim to suffer an additional risk of harm beyond that inherent in child abuse. In this case, unlike in *Gordon* where the defendant used physical force and abuse to restrain the victim, the kidnapping involved no significant additional risk of harm to the victim.

Thus, we conclude that defendant committed a single act resulting in the commission of two crimes. Although under *Tinghitella* consecutive sentences would be permissible, the *Gordon* analysis indicates that the entire "transaction" constituted one act, punishable only by concurrent sentences.

### Conclusion

Because the court of appeals erred in applying *Lawrence* to the facts of this case

and misinterpreted "without legal authority," we vacate that portion of the decision dismissing the kidnapping count, based on our holding that the father of a child may be convicted of kidnapping when the father's intent in restraining the child is for one of the acts enumerated in the kidnapping statute. We affirm defendant's convictions.

Because we are unable to determine from the record before us that the trial court would have imposed the same sentences if it had been aware that consecutive sentences were not available, we must remand for resentencing in accordance with this opinion. The sentences for kidnapping and child abuse must be concurrent, but may be consecutive to the two sentences for sexual conduct with a minor not involving this victim.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.