# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

FLORENTINO MARQUEZ-LOBOS,
   *Defendant-Appellant.*

No. 10-10470

D.C. No.
2:09-cr-01584-
ROS-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
March 12, 2012—San Francisco, California

Filed June 19, 2012
Amended September 21, 2012

Before: John T. Noonan, Jr., M. Margaret McKeown, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

11625

## COUNSEL

Randall M. Howe (argued), Krissa Marie Lanham, and Dennis Burke, Office of the United States Attorney, Phoenix, Arizona, for plaintiff-appellee United States of America.

Theron M. Hall III (argued), The Hall Law Firm, P.C., Phoenix, Arizona, for defendant-appellant Florentino Marquez-Lobos.

## ORDER

The opinion filed on June 19, 2012 is amended as follows:

On slip opinion page 7089, remove the paragraph from lines 1 to 10, starting with "Finally, even if Marquez-Lobos is correct that the Arizona statute sweeps more broadly than the generic crime . . ." and ending with ". . . in which such a prosecution occurs."

With this amendment, the panel has unanimously voted to deny the petition for panel rehearing. Judges McKeown and

Smith have voted to deny the petition for rehearing en banc, and Judge Noonan so recommends.

The full court has been advised of the petition for rehearing en banc, and no active judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc is DENIED. No future petition for panel rehearing or rehearing en banc will be entertained in this case.

---

**OPINION**

M. SMITH, Circuit Judge:

Florentino Marquez-Lobos appeals the 16-level enhancement of his sentence due to his prior 1985 conviction for kidnapping, under Arizona Revised Statute (ARS) § 13-1304. The district court found that his prior kidnapping conviction was a "crime of violence," as defined under the United States Sentencing Guidelines, U.S.S.G. § 2L1.2(b)(1)(A), and sentenced him to a term of 58 months in prison for illegally entering the country after deportation. On appeal, Marquez-Lobos contends that ARS § 13-1304 does not meet the generic definition of kidnapping, and therefore does not qualify as a "crime of violence" under either the categorical or modified categorical approach.

In *United States v. Gonzalez-Perez*, 472 F.3d 1158, 1161 (9th Cir. 2007), we held that the generic definition of kidnapping "encompasses, at a minimum, the concept of a 'nefarious purpose' motivating restriction of a victim's liberty" in addition to "the unlawful deprivation of another person's liberty of movement." We hold that ARS § 13-1304 categorically meets this generic definition, and we affirm Marquez-Lobos's sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

Marquez-Lobos pled guilty to illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a). The probation office calculated the Sentencing Guidelines in the Presentence Report (PSR) as follows:

| | |
|---|---|
| Base Offense Level: | 8 |
| Specific Offense Characteristics: | 16 |
| Adjusted Offense Level | 24 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 21 |

The PSR recommended a 16-level enhancement because Marquez-Lobos's 1985 conviction for kidnapping under ARS § 13-1304 constituted a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A). Marquez-Lobos objected to this enhancement at sentencing, but the district court overruled his objection, and sentenced Marquez-Lobos to a term of 58 months. Marquez-Lobos appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

We review de novo whether a conviction constitutes a "crime of violence" under the Sentencing Guidelines. *United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005).

## DISCUSSION

### I. Sentencing Guidelines and Arizona Revised Statute § 13-1304

[1] The crime of unlawfully entering the United States under 8 U.S.C. § 1326 carries a base offense level of 8 under

the Sentencing Guidelines. U.S.S.G. § 2L1.2(a). A defendant's base offense level may be increased by 16 levels if he has a prior felony conviction that qualifies as a "crime of violence." *Id.* § 2L1.2(b)(1)(A). The Sentencing Guidelines define a "crime of violence" as:

> [A]ny of the following offenses under federal, state, or local law: Murder, manslaughter, *kidnapping*, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or *any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

*Id.* § 2L1.2 Application Notes 1.B.iii (emphasis added).

The PSR cited Marquez-Lobos's prior conviction under ARS § 13-304, which, at the time of Marquez-Lobos's conviction, read as follows:

> A.   A person commits kidnapping by knowingly *restraining* another person with the intent to:
>
> > 1.   Hold the victim for ransom, as a shield or hostage; or
> >
> > 2.   Hold the victim for involuntary servitude; or
> >
> > 3.   Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or

    4.   Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or the third person; or

    5.   Interfere with the performance of a governmental or political function; or

    6.   Seize or exercise control over any airplane, train, bus, ship or other vehicle.

B.   Kidnapping is a class 2 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place before arrest and before accomplishing any of the further enumerated offenses in subsection A of this section in which case it is a class 4 felony. If the victim is released pursuant to an agreement with the state and without any physical injury, it is a class 3 felony. If the victim is under fifteen years of age kidnapping is a class 2 felony punishable pursuant to § 13-705. The sentence for kidnapping of a victim under fifteen years of age shall run consecutively to any other sentence imposed on the defendant and to any undischarged term of imprisonment of the defendant.

ARS § 13-1304 (emphasis added).

  Arizona defines the term "restrain" as follows:

"Restrain" means to restrict a person's movements *without consent, without legal authority, and in a manner which interferes substantially with such person's liberty*, by either moving such person from one place to another or by confining such person. Restraint is *without consent* if it is accomplished by:

    (a) Physical force, intimidation or deception; or

> (b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement.

ARS § 13-1301(2) (emphasis added).

## II.  *Taylor* Categorical Framework

We apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a defendant's prior conviction constitutes a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A). *United States v. Pimentel-Flores*, 339 F.3d 959, 968 (9th Cir. 2003). We first apply the categorical analysis. Under this approach, we "do not examine the facts underlying the prior offense, but look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 967 (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S.S.G. § 2L.1, CMT n. 4 (2002)). If the statutory definition of the prior offense criminalizes conduct that would not constitute a "crime of violence," then the statute is not a categorical fit, and we must consider whether the prior conviction may still be used for a sentencing enhancement under the modified categorical approach. *Pimentel-Flores*, 339 F.3d at 967. Under this approach, a prior conviction may only be used for a sentencing enhancement if "the record includes documentation or judicially noticeable facts that clearly establish that the conviction is a predicate for enhancement purposes." *Id.* (quoting *Corona-Sanchez*, 291 F.3d at 1203).

Finally, if both the statute and the documents containing judicially noticeable facts would allow the defendant to be convicted of an offense that would not be a "crime of vio-

lence," then the sentencing enhancement may not be applied. *See Corona-Sanchez*, 291 F.3d at 1203-04.

## III.    Categorical Analysis

To apply the categorical analysis in this case, we compare the statute that Marquez-Lobos violated—ARS § 13-1304— with the generic definition of a "crime of violence," and determine if there is a categorical fit. In other words, does all conduct that could be criminalized under ARS § 13-1304 constitute a "crime of violence?"

Marquez-Lobos first urges us to ignore the PSR's reference to ARS § 13-1304 because the PSR did not specify the subsection of the statute under which Marquez-Lobos was previously convicted. He equates this general statutory reference in the PSR with not referring to a statute at all. In *Pimentel-Flores*, the PSR only stated that the defendant had a prior conviction for "assault in violation of court order, a felony," and did not list a corresponding statutory provision for the conviction. 339 F.3d at 967-68. We held that it was improper for the sentencing court to rely only on this factual description, without referring to any statute. *Id.* We reject Marquez-Lobos's attempt to expand our holding in *Pimentel-Flores* to the facts in this case because a statute (ARS § 13-1304) was clearly listed in the PSR here. Marquez-Lobos is correct that the PSR did not limit the conviction to one of the six possible subsections under ARS § 13-1304(A), but that fact is meaningless here because we conclude that the proper way to apply the categorical analysis in this case is to consider the statute as a whole. In other words, we must consider whether a conviction under any subsection of ARS § 13-1304 necessarily would constitute a "crime of violence."

ARS § 13-1304 could qualify categorically as a "crime of violence" in one of two ways. First, it could qualify if it has "an element of use, attempted use or threatened use of physical force against the person of another." *Gonzalez-Perez*, 472

F.3d at 1160. Second, it could qualify if it constitutes "kidnapping in its generic sense." *Id.*

## A.   Element of Force

**[2]** The force necessary to qualify as a crime of violence must actually be "violent in nature." *Gonzalez-Perez*, 472 F.3d at 1160 (quoting *United States v. Lopez-Montanez*, 421 F.3d 926, 929 (9th Cir. 2005)). We held in *Gonzalez-Perez* that a Florida false imprisonment statute did not have an element of force because the confinement could be done "secretly." *Id.*

**[3]** Similarly, Arizona courts have held that kidnapping under ARS § 13-1304 may be "committed without the use or threat of violence." *State v. Bible*, 175 Ariz. 549, 604 (1993). Furthermore, the Arizona courts have held that when the victim is a minor who is less than 18 years old or incompetent, "the question whether physical force, intimidation, or deception has been used is immaterial. The key to establishing lack of consent is non-acquiescence by the lawful custodian." *State v. Viramontes*, 163 Ariz. 334, 336 (1990). Thus, because there are situations where one may be convicted of kidnapping under ARS § 13-1304 where there is no use or threat of violence, we find that the required element of physical force is missing from the statute.

## B.   Generic Definition of Kidnapping

In order to determine whether ARS § 13-1304 constitutes "kidnapping in its generic sense," we must first determine the generic definition of kidnapping.

The label a state uses for a crime does not control whether the crime fits the generic definition. *Taylor*, 495 U.S. at 599. Rather, we "derive the crime's uniform meaning from the generic, contemporary meaning employed by most states, guided by scholarly commentary." *United States v. Esparza-*

*Herrera*, 557 F.3d 1019, 1023 (9th Cir. 2009) (quoting *United States v. Gomez-Leon*, 545 F.3d 777, 790 (9th Cir. 2008)). The Model Penal Code (MPC) may "serve[ ] as an aid." *United States v. Rodriguez-Guzman*, 506 F.3d 738, 744 (9th Cir. 2007). Ultimately, we derive the meaning of the enumerated Guidelines crime not by the ordinary meaning of the crime, but by surveying the Model Penal Code and state statutes to determine how they define the offense. *Esparza-Herrera*, 557 F.3d at 1023.

**[4]** We addressed the generic definition of kidnapping in *Gonzalez-Perez*, and held that the generic definition of kidnapping "encompasses, at a minimum, the concept of a 'nefarious purpose' motivating restriction of a victim's liberty" along with "the unlawful deprivation of another person's liberty of movement." 472 F.3d at 1161. We hold that ARS § 13-1304 meets the generic definition of kidnapping, as defined in *Gonzalez-Perez*.

### i. Nefarious Purpose

**[5]** First, ARS § 13-1304 includes the element of the "concept of a 'nefarious purpose.' " It is not enough for a perpetrator to simply act to restrain another person. Rather, ARS § 13-1304(A) requires that the perpetrator act with one or more of six enumerated purposes set forth in the section of the statute before his act can constitute kidnapping. See *supra*. Our conclusion is consistent with the reasoning of other circuits, who have themselves listed ARS § 13-1304 as a statute requiring a nefarious purpose, when conducting a *Taylor* analysis of other kidnapping statues. *See, e.g.*, *United States v. Soto-Sanchez*, 623 F.3d 317, 322 (6th Cir. 2010) (including ARS § 13-1304 in a survey of state statutes that "require a specific, 'nefarious' purpose other than merely restraining the victim"); *United States v. De Jesus Ventura*, 565 F.3d 870, 876 n.5 (D.C. Cir. 2009) (same).

Marquez-Lobos's only argument to the contrary is that the nefarious purposes enumerated in ARS § 13-1304 are broader

than those contained in the generic definition of kidnapping. However, Marquez-Lobos fails to indicate what nefarious purposes he believes are contained in the generic definition of kidnapping. We clarified in *Gonzalez-Perez* that all that is required is a "concept" of a nefarious purpose—an additional, specific purpose other than restraint of the victim. 472 F.3d at 1161. We did not outline a specific list of such purposes.

This approach is consistent with the approach taken by other circuits. *See Soto-Sanchez*, 623 F.3d at 323 (finding that the generic definition of kidnapping requires "more than unlawful confinement or restraint of the victim," but declining to limit the generic definition to only the specific nefarious purposes identified in the MPC); *De Jesus Ventura*, 565 F.3d at 876 (finding that a majority of jurisdictions define kidnapping to include a criminal purpose and while some states limit to the purposes in the MPC, others do not). Accordingly, we reject Marquez-Lobos's argument, and find that ARS § 13-1304 meets the "nefarious purpose" requirement included in the generic definition of kidnapping.

### ii. Unlawful Deprivation of Liberty

**[6]** We also conclude that ARS § 13-1304 contains the required element of "the unlawful deprivation of another person's liberty of movement." *Gonzalez-Perez*, 472 F.3d at 1161. ARS § 13-1304 states that "[a] person commits kidnapping by knowingly *restraining* another person," and further defines "restrain" as "restrict[ing] a person's movements *without consent, without legal authority, and in a manner which interferes substantially with such person's liberty*, by either moving such person from one place to another or by confining such person." (emphasis added).

Marquez-Lobos contends that the way "restraint" is defined in ARS § 13-1304 is broader than how it is defined under the generic definition of kidnapping. The Arizona statutes define

"restraint without consent" as restraint that is accomplished by:

> (a) Physical force, intimidation or deception; or

> (b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an incompetent person and the victim's lawful custodian has not acquiesced in the movement or confinement.

Ariz. Rev. Stat. § 13-1301(2). Marquez-Lobos asserts that the wording of § 13-1301(2)(b) would include in the definition of kidnapping a situation where a person is confined or moved—regardless of whether he or she consented—if the person is underage or incompetent and the legal guardian does not consent. He contends that the Arizona statute defines this age of consent to be 18, whereas it is lower (in the 13-16 age range) in a slight majority of other states, and thus, it is broader than what should be included in the generic definition.

Marquez-Lobos argues that a slight majority of states (28) and the MPC have a provision similar to ARS § 13-1304, which sets an age when guardian consent is required. Four of these states set the age at 18, as does Arizona. The applicable age in the 24 remaining states, out of the 28, varies from 13 to 16. Even assuming that the failure of the remaining 22 states to include an age requirement does not doom Marquez-Lobos's argument that an age of consent requirement is a necessary element of the generic crime of kidnapping, it is hardly clear that the generic definition incorporates a *specific* age of consent, given the varied approach of the states to the requirement.

At least one other circuit has suggested that a minor's incapacity should be considered when determining whether a crime fits the generic elements of kidnapping, but has also refrained from requiring a specific age.

The Fifth Circuit held in *United States v. Iniguez-Barba*, 485 F.3d 790 (5th Cir. 2007), that the New York kidnapping statute meets the generic definition of kidnapping. The New York statute, like ARS § 13-1304, contains a provision requiring guardian consent for minors under a certain age, but defined that age to be 16.[1] *Id.* at 791. A previous Fifth Circuit case had already held that the Tennessee statute for kidnapping met the generic definition of kidnapping. *See United States v. Gonzalez-Ramirez*, 477 F.3d 310 (5th Cir. 2007). The Tennessee statute had a similar age provision, but set the age at 13. *Id.* at 314-15. In analyzing the New York statute in light of its previous ruling on the Tennessee statute, the *Iniguez-Barba* court noted that both statutes required "knowing removal or confinement" and "substantial interference with the victim's liberty." 485 F.3d at 791-92. The court next observed that the New York statute also included the requirement in the Tennessee statute that the offense include "force, threat, or fraud, or . . . if the victim is incompetent or under age thirteen, lack of consent from the person responsible for

---

[1]In *Iniguez-Barba*, the defendant was convicted of a statute stating that "a person is guilty of kidnapping in the second degree when he abducts another person." 485 F.3d at 791 (citing N.Y. Penal Law § 135.20). Abduct was defined as "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." *Id.* In turn, restrain was defined to mean:

> restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. *A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception, or (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.*

*Id.* (emphasis added).

the general supervision of the victim's welfare." *Id.* at 792. In doing so, the court did not mention the difference between the statutes in terms of the age of the victim. Were we to agree with Marquez-Lobos's argument, the New York statute setting the age at 16 would be broader than the Tennessee statute setting the age at 13, and the court would have had to survey the ages from other states to determine if 16 was too broad for a categorical match. However, this difference is irrelevant because the Fifth Circuit court found it unnecessary to include the actual age of the victim in its analysis. Instead, the court considered the elements more broadly, to include "force, threat, or fraud or, for children or incompetents, lack of valid consent." *Id.* In doing so, the court framed the element addressing "consent" to be when someone is a minor or incompetent—without requiring a specific age for when a minor becomes competent—as part of the generic definition. In a later case, the Fifth Circuit reiterated its holding that kidnapping need only include 1) knowing removal or confinement, 2) substantial interference with the victim's liberty, and 3) force, threat or fraud, or if the victim is incompetent or under age, lack of consent. *United States v. Cervantes-Blanco*, 504 F.3d 576, 585 (5th Cir. 2007); *see also United States v. Moreno-Florean*, 542 F.3d 445, 454 (5th Cir. 2008) (shortcutting the last element to "force, threat, or fraud").[2]

**[7]** We therefore decline to narrow the generic definition of kidnapping from the one included in *Gonzalez-Perez*, and we hold that ARS § 13-1304 contains all the elements required to meet the generic definition of kidnapping.[3] Accordingly, Marquez-Lobos's prior conviction under ARS

---

[2]The Fifth Circuit does not require a nefarious purpose, as we did in *Gonzalez-Perez*, so the generic definition from the cited Fifth Circuit cases conflict with our case law to that extent. However, we see no reason to reinterpret our view of the meaning of the unlawful restraint element of the crime.

[3]Because we find that ARS § 13-1304 categorically meets the generic definition of kidnapping, we do not engage in any modified categorical analysis.

§ 13-1304 categorically qualifies as a "crime of violence," and his 16-level sentence enhancement was properly imposed.

## CONCLUSION

We hold that Arizona Revised Statute § 13-1304, categorically meets the generic definition of kidnapping, and we **AFFIRM** Marquez-Lobo's sentence.