947 P.2d 900

**STATE of Arizona, Appellee, Cross Appellant,**

v.

**Roger Lane SUPINGER, Appellant, Cross Appellee.**

**No. 1 CA–CR 96–0410.**

Court of Appeals of Arizona, Division 1, Department E.

July 29, 1997.

Review Denied Dec. 16, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Mona Peugh–Baskin, Assistant Attorney General, Phoenix, for Appellee–Cross Appellant.

Michael L. Vaughn, Phoenix, for Appellant–Cross Appellee.

## OPINION

WEISBERG, Judge.

Roger Lane Supinger ("defendant") appeals his convictions and sentences for one count of sexual conduct with a minor and one count of child molestation. The state cross-appeals, challenging the trial court's imposition of concurrent sentences. We affirm defendant's convictions but vacate the

---

1. We view the evidence in the light most favorable to sustaining the convictions, resolving all reasonable inferences against the defendant.

sentences and remand for imposition of consecutive sentences.

## FACTUAL [1] AND PROCEDURAL BACKGROUND

At the relevant time, C.C. ("the victim") was nine years old and living with her mother ("L.C.") and defendant, who were unmarried companions. After the victim reported that defendant had sexually abused her, she was questioned by detectives from the Maricopa County Sheriff's Department. Following that interview, the detectives interviewed defendant and L.C. The detectives then informed the victim about statements defendant made during his interview, which caused the victim to become distraught and recant her allegations. After regaining her composure, she told the detectives that her recantation was untrue.

Several days later, the victim repeated her original allegations to Margaret Lothian, a social worker, but repeatedly qualified her account by stating: "This is what I think happened, but I don't believe it." She also related that L.C. had told her that she did not know "whether to believe her [the victim] or not."

Conforming with her original allegations, the victim testified at trial that, after defendant had her undress, he penetrated her vagina digitally and then with his penis. The victim said that defendant had told her to keep the matter secret. A medical examination indicated damage to the victim's hymen consistent with the described penetration.

The jury found defendant guilty of sexual conduct with a minor under age 15 and of child molestation, both class 2 felonies and dangerous crimes against children. The trial judge imposed aggravated prison sentences of 23 years and 20 years, respectively. Over the state's objection, the judge ordered that the sentences be served concurrently. Defendant filed a timely notice of appeal, raising the following issues:

*State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992).

1. Whether the trial court erred in overruling his hearsay objection to statements attributed to L.C.; and

2. Whether the prosecutor committed fundamental error by misstating facts during closing argument.

The state has cross-appealed, arguing that the trial court erred by imposing concurrent sentences.

## DISCUSSION

### I. ADMISSION OF HEARSAY

During the direct examination of the investigating detective, the prosecutor asked about statements L.C. made after the detective had informed her of her daughter's allegations. After an unrecorded bench conference, the trial court sustained defendant's hearsay objection. Later, the jury was excused and another unrecorded conference ensued. When the jury returned, the prosecutor again inquired about the detective's conversation with L.C., and the following exchange occurred:

Q. Do you recall what she said to you at that time about what [the victim] had said?

A. She didn't believe [the victim]. She made a comment that [the victim] had been telling lies of late.

Subsequently, Lothian testified about her conversation with L.C.:

Q. And did [L.C.] tell you anything, at that time, that indicated her attitude toward this process?

A. Yes. She stated that she did not believe that Roger had done this, that she knew him too well. They've been together for eight years, and he would never do anything like this.

Q. Did she indicate how she felt about [the victim] at this point?

A. She felt that [the victim] wasn't telling the truth.

Lothian also testified about L.C.'s reaction after she was informed of the results of the victim's medical examination, and the doctor's conclusion that the victim had been molested:

Q. And did you observe any emotional reaction by [L.C.] to this?

. . . .

A. She was very angry. She stated that she had been sexually abused as a child by an uncle and nobody had supported her. She had only gotten a little bit of counseling.

Q. Could you tell who she was angry at?

A. She appeared to be most angry at [the victim].

Q. Did she express any anger at the defendant?

A. No. In fact, when we discussed what would be happening next and I was giving her resources, testifying in court came up and she became extremely angry and said she wouldn't testify in court and she jumped up and she left.

Q. Meaning she herself or was she talking about [the victim]?

A. I believe the words were "There would be no testifying in court." She jumped up and pushed her way out of the room and left.

■ Defendant argues on appeal that L.C.'s statements to the detective and to Lothian were inadmissible hearsay. Ordinarily, our review of the issue would be thwarted by the lack of a record of the conference at which the court considered the issue. *See State v. Fletcher*, 149 Ariz. 187, 189, 717 P.2d 866, 868 (1986) (noting that appellate review is hindered by absence of contemporaneous record of court's consultation with counsel). But here, the parties revisited the issue when defendant made a motion for new trial. Defendant asserted that the trial court erred by finding L.C.'s statements admissible under Rule 803(3), Arizona Rules of Evidence ("Rule(s)"), an exception to the hearsay rule for statements of "[t]hen existing mental, emotional, or physical condition." The state responded that the statements were admissible either under that rule or as non-hearsay to show L.C.'s state of mind. The trial judge noted that he had ruled on the issue at trial and denied the motion for new trial "for the reasons already indicated." We find no error.

■ First, we find that the detective's testimony concerning L.C.'s statement that she did not believe the victim constitutes hearsay because it was offered by the prosecution "to prove the truth of the matter asserted," i.e. that L.C. disbelieved the victim. *See* Ariz. R. Evid. 801(c). However, the statement was properly admitted under Rule 803(3) which permits hearsay concerning a "[t]hen existing mental [or] emotional ... condition." L.C.'s disbelief of her daughter's allegations demonstrated a lack of parental support that might explain the child's later recantations. *See State v. Wood*, 180 Ariz. 53, 63, 881 P.2d 1158, 1168 (1994) (victim's statements regarding fear of defendant and desire to end relationship with him "were not offered to prove any fact. Instead, they related solely to her state of mind when the statements were made and thus fit within the Rule 803(3) exception"). Under Rule 803(3), "[a] statement may be proffered to prove declarant's then existing state of mind, not as an end itself, but as the basis for an inference that he subsequently acted on the basis of his earlier intention or design." 4 Jack Weinstein and Margaret Berger, WEINSTEIN'S EVIDENCE ¶ 803(3)[02], at 803–119 (1996). To this end, Lothian testified that a parent's disbelief of a child's allegation was a factor that could cause a false recantation, thus making L.C.'s state of mind relevant.

The same analysis applies to L.C.'s statements to Lothian regarding her anger; her "belief" that defendant had not committed the offense; her "feeling" that the victim was lying; and her goal that there be no testimony in court. All of these statements were admissible under Rule 803(3).

■ Finally, the detective's testimony regarding L.C.'s statement "that [the victim] had been telling lies of late," and that L.C. had been sexually abused as a child and had not been given sufficient counseling, were non-hearsay because they were not offered for the truth of the matter asserted. *See* Ariz. R. Evid. 801(c). The state obviously did not intend to prove that the victim had recently told lies or that L.C. was victimized as a child. Rather, those statements were offered to show the mother's reactions to the child's allegations of abuse and were relevant to support the state's position that the recantation was false.

## II.   IMPROPER CLOSING ARGUMENT

■ During her rebuttal closing argument, the prosecutor stated:

> Now first, of all, [defense counsel] told you that [the victim] recanted this story twice. And that, actually, is not true. If you remember the testimony, Detective Schneidmiller said, yes, two-thirds of the way of [sic] the interview, she started saying, no, it didn't happen. She had made it up.

> But I asked Margaret Lothian the same thing. About, two-thirds, three-quarters of the way through your interview with [the victim], did she recant? And she said no. *Margaret Lothian said "She never recanted to me."* She did come in saying, said many times "This is what I think happened, but I don't believe it." But she did not recant to Margaret Lothian and say it didn't happen.

(Emphasis added.) On appeal, defendant argues that the prosecutor committed misconduct because Lothian never made the statement highlighted above.

Because defendant did not raise this objection at trial, the issue is waived in the absence of fundamental error. *State v. Duzan*, 176 Ariz. 463, 467, 862 P.2d 223, 227 (App. 1993). Notwithstanding, we find no error because the prosecutor's argument was factually supported by the record of Lothian's direct examination.

Although Lothian did not say, "She never recanted to me," the following exchanges did occur on the record:

> Q [Prosecutor]. At some point during your interview of [the victim], did she change her story?

> A [Lothian]. No. Her story stayed the same. She just kept saying that, "This is what I think happened, but I don't believe it happened. My mom told me to tell the truth.

> . . . .

> Q [D]id she start telling you that she had made this up, that it didn't happen?

A She didn't change her story. She just kept repeating her mom told her to tell the truth, that that's what she thought happened but she didn't believe it.

This testimony supports the prosecutor's statement in rebuttal. Moreover, the prosecutor scrupulously noted that the victim had equivocated "many times" by saying "I don't believe it" happened. This avoided any possibility that the jury would be misled by her characterization of Lothian's testimony. We therefore conclude that the comment was proper.

## III. IMPOSITION OF CONCURRENT SENTENCES

■ The trial court based its imposition of concurrent sentences on Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–604.01(I) (1996), concluding that it permitted concurrent sentences in this case. In its cross-appeal, the state contends that, under the circumstances of this case, the statute requires consecutive sentences. We agree with the state.

A.R.S. section 13–604.01 provides sentences for dangerous crimes against children. Subsection (I) states, in pertinent part:

The sentence imposed on a person by the court for a dangerous crime against children in the first or second degree *shall be consecutive* to any other sentence imposed on the person *at any time* except that the sentence imposed on a person by the court for a dangerous crime against children under subsection B of this section involving child molestation ... shall be consecutive to any other sentence imposed on the person at any time if the offense involved more than one victim.

(Emphasis added.)

The subsection is thus comprised of a general rule and an exception. The general rule applies to dangerous crimes against children in the first- or second-degree that do not fall within the exception, and requires that the sentence for such an offense be served "consecutive to any other sentence." The exception applies to sentences for child

molestation [2] and requires that such be served consecutive to any other sentence only when the molestation "involve[s] more than one victim." If the molestation involves only one victim, the sentence may be served concurrent with any other sentence.

In this case, defendant was convicted for two dangerous crimes against children. One conviction, sexual conduct with a minor, is covered by the general rule in A.R.S. section 13–604.01(I), and the other conviction, child molestation, is covered by the exception. Because one conviction falls within the exception, the trial court concluded that the sentences could be served concurrently. We, however, disagree.

To take advantage of the exception, defendant's sentence for child molestation would have to be served concurrent with his sentence for sexual conduct with a minor. The first part of A.R.S. section 13–604.01(I), however, mandates that the sexual conduct sentence be served consecutive to *any other sentence*. Thus, were the exception to permit a concurrent sentence for the molestation, it would nullify the requirement for a consecutive sentence on the sexual conduct. Such a result would violate the maxim that we interpret statutes so as not to "render[ ] statutory language superfluous, void, contradictory, or insignificant." *State v. Tarango*, 182 Ariz. 246, 251, 895 P.2d 1009, 1014 (1994).

We therefore conclude that the exception in A.R.S. section 13–604.01(I) applies only when two or more sentences are within the exception, or when one of the sentences is not a dangerous crime against children. For example, a sentence for child molestation under A.R.S. section 13–604.01(B) may be served concurrent with a sentence for another count of child molestation, which also falls within the exception, or a drug offense not involving a minor, which is not a dangerous crime against children. Such a sentence may not, however, be served concurrently with a sentence for another dangerous crime against children that does not fall within the exception. Any other interpretation would

---

**2.** We note that the exception also applies to sentences for sexual abuse under subsection (C) of the statute, but we confine our discussion to sentences for child molestation because that is what is at issue here.

render meaningless the general rule requiring consecutive sentences.[3]

Accordingly, we conclude that the trial court erred by imposing concurrent sentences in this case. Unfortunately, we are unable to determine from the record what sentences the court would have imposed had it known that consecutive terms were required. We therefore remand for resentencing. *Cf. State v. Viramontes,* 163 Ariz. 334, 340, 788 P.2d 67, 73 (1990) (matter remanded for resentencing when trial judge erroneously determined that consecutive terms were required).

## CONCLUSION

For the foregoing reasons, we affirm defendant's convictions, vacate his sentences, and remand for resentencing. We have not reviewed the record for fundamental error. *See State v. Smith,* 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

KLEINSCHMIDT and VOSS, JJ., concur.

**3.** We note, however, that if a defendant has multiple convictions for dangerous crimes against children and more than one falls within the exception, those sentences falling within the exception may be concurrent *with each other* but must be consecutive to any other sentence(s) for a dangerous crime against children not falling within the exception.