IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee/Cross-Appellant*,

*v.*

RONALD MARVIN BROCK, *Appellant/Cross-Appellee*.

No. 1 CA-CR 17-0455
No. 1 CA-CR 17-0466
(Consolidated)
FILED 3-12-2020

Appeal from the Superior Court in Yavapai County
No. P1300CR201600850
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore* (Retired)

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**

COUNSEL

Yavapai County Attorney's Office, Prescott
By Michael P. McGill
*Co-counsel for Appellee/Cross-Appellant*

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Co-counsel for Appellee/Cross-Appellant*

Craig Williams Attorney at Law PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant/Cross-Appellee*

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Judge Maria Elena Cruz joined. Presiding Judge Diane M. Johnsen[1] concurred in part and dissented in part.

H O W E, Judge:

¶1 Ronald Marvin Brock appeals his convictions and sentences for molestation of a child, sexual exploitation of a minor, and possession of drug paraphernalia. He asserts that the statute proscribing sexual exploitation of a minor is unconstitutional and contends that the trial court erroneously denied his requested jury instruction and motion for acquittal. The State also appeals, arguing that the court erred in sentencing Brock to concurrent terms of imprisonment.[2]

---

[1] Judge Johnsen was a sitting member of this Court when the matter was assigned to this panel of the Court. She retired effective February 28, 2020. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12–145, Chief Justice of the Arizona Supreme Court has designated Judge Johnsen as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during her term in office.

[2] Although a defendant will normally file a notice of appeal from his conviction and sentence before the State files a notice of cross-appeal seeking to correct a trial court error, in this case the State filed its notice of appeal before Brock filed his notice of appeal. To avoid confusion, this Court will use the term "appeal" for both parties. The filing anomaly does not affect our analysis of Brock's or the State's issues on appeal.

Brock argues, however, that this Court should dismiss the State's appeal as untimely because it filed its notice of appeal before he filed his. But nothing precludes the State from filing a notice of appeal challenging an adverse legal ruling or an allegedly illegal sentence regardless whether or when a defendant files a notice of appeal challenging a conviction or sentence, *see* A.R.S. § 13–4032(3), (5), as long as it files the notice within 20

¶2          We affirm Brock's convictions and sentences it part but remand for resentencing of his child-molestation convictions because those sentences must be consecutive to each other rather than concurrent. Under the plain language of A.R.S. § 13–705(M), a defendant who commits two counts of child molestation upon the same victim must receive mandatory consecutive sentences, an outcome that is also consistent with the purpose of the dangerous crimes against children statute.

## FACTS AND PROCEDURAL HISTORY

¶3          We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013). In 2011, the 13-year-old victim frequently webcast herself singing and playing the piano on a public website. Brock visited that website, viewed the victim's performances and contacted her online. Initially, he identified himself as a man in his early 20s, although he was actually in his mid-30s, and the victim likewise misrepresented her age, claiming to be 19 years old.

¶4          During the weeks that followed, Brock and the victim regularly communicated online, primarily discussing music. About six weeks after their initial contact, the victim revealed her true age to Brock. Undeterred, Brock continued to contact the victim, talked to her about sexual topics, and encouraged her to engage in online sexual activity with him.

¶5          For the next 18 months, Brock and the victim used webcams to engage in sexual activity with each other online, including mutual masturbation. Over time, the relationship distressed the victim, and she repeatedly tried to end it. Each time she told Brock she wanted out of the relationship, he "lashed out" and threatened to reveal the victim's sexual activity to her family, post nude pictures of her online, and harm himself, her, or her family. Eventually, however, the victim told her father what had happened, and he notified the police.

¶6          Officers interviewed Brock and executed a search warrant on his home. During the interview, Brock readily acknowledged that he had engaged in an online relationship with the victim but claimed that he had

_____

days of the pronouncement of sentence, Ariz. R. Crim. P. 31.2(a)(2)(A). The State's notice of appeal was timely because it filed the notice one week after the sentence was pronounced. Brock had sufficient notice of the State's appeal, and we have no reason to dismiss it.

ended it once he learned her true age. When pressed, however, Brock eventually admitted that he had maintained a sexual relationship with the victim even after he had found out she was a minor. During their search of Brock's home, officers seized various electronics as well as small plastic bags of marijuana, pipes, and bongs. Subsequent forensic analysis of the electronics revealed a document titled "[Victim's] Countdown Clock," which identified the victim's eighteenth birthday and calculated the days until she reached the age of majority. Police also found numerous screen images showing the victim naked, many of which also included an image from a small camera feed in the lower right-hand corner showing Brock as he viewed the victim's webcast. The State charged Brock with one count of continuous sexual abuse of a child, two counts of molestation of a child, one count of sexual exploitation of a minor, one count of possession or use of marijuana, and one count of possession of drug paraphernalia.

¶7        Before trial, Brock moved to dismiss the sexual exploitation of a minor charge, asserting that A.R.S. § 13–3553 infringes upon protected expression in violation of the First Amendment by criminalizing "mere nudity" and unspoken "thoughts." After hearing argument, the trial court denied the motion, finding that one of the seized images (Exhibit 19), which was found in a folder Brock had labeled "[Victim]-Sexy," focused directly on the victim's pubic area and therefore "likely" constituted "child pornography" rather than "mere nudity."

¶8        At trial, defense counsel acknowledged in his opening statement that Brock had engaged in online sexual activity with the victim even after he had learned she was only 13 years old. Defense counsel admitted that Brock had threatened the victim after she had repeatedly tried to "shut[] him down[.]" Nonetheless, defense counsel denied that Brock had "caused" the victim to engage in the sexual activity and argued that they had "clearly" shared a "consensual" sexual relationship. After the State rested, Brock moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20. "[V]iewing the evidence in the light most favorable to the prosecution," the trial court found that substantial evidence supported the charges and denied the motion. During closing argument, Brock argued extensively the theory that Exhibit 19 was merely a nude photo rather than child pornography.

¶9        The jury acquitted Brock of continuous sexual abuse and possession or use of marijuana but convicted him of the remaining charges. The trial court sentenced him to a mitigated term of 13 years' imprisonment on one molestation of a child count; a concurrent, mitigated term of 10 years on the other molestation of a child count; a consecutive, mitigated term of

10 years for sexual exploitation of a minor; and a 10-day period of unsupervised probation for possession of drug paraphernalia, to commence upon his release from prison. The State timely appealed the trial court's imposition of concurrent sentences for Brock's child-molestation convictions. Brock timely appealed his convictions and sentences.

## DISCUSSION

### 1. Constitutional Validity of A.R.S. § 13–3553

**¶10** Brock argues that the trial court erred by denying his motion to dismiss the sexual exploitation of a minor count because the statute, A.R.S. § 13–3553, is unconstitutionally overbroad.[3] We review the denial of a motion to dismiss an indictment for an abuse of discretion, *State v. Pecard*, 196 Ariz. 371, 376 ¶ 24 (App. 1999), but review de novo whether a law is unconstitutionally overbroad, *State v. Boehler*, 228 Ariz. 33, 35 ¶ 4 (App. 2011). "A statute is unconstitutionally over broad when it prohibits or deters conduct protected by the First Amendment." *State v. Carrasco*, 201 Ariz. 220, 224 ¶ 14 (App. 2001). We presume a statute is constitutional, and the challenging party "bears the burden of establishing its invalidity." *Boehler*, 228 Ariz. at 35 ¶ 4. "[C]ourts will invalidate a statute that reaches a substantial amount of constitutionally protected conduct," even if it also has lawful applications. *Id*. at ¶ 5 (internal quotation omitted). Nonetheless, a statute is unconstitutionally overbroad only if "its deterrent effect on legitimate expression [is] not only real, but substantial as well." *State v. Ochoa*, 189 Ariz. 454, 459 (App. 1997) (internal quotation omitted).

**¶11** As Brock notes, the right of freedom of expression enshrined in the First Amendment outweighs the State's limited interest in regulating private in-home possession of adult obscenity. *See State v. Emond*, 163 Ariz. 138, 139, 141 (App. 1989). But the State has a compelling interest in combating the sexual abuse and exploitation of children that underlie child pornography. *Osborne v. Ohio*, 495 U.S. 103, 108 (1990); *New York v. Ferber*, 458 U.S. 747, 762–63 (1982); *see also State v. Berger*, 212 Ariz. 473, 477 ¶ 19 n.2 (2006); *Emond*, 163 Ariz. at 139–40. Because the State's interest in protecting children far exceeds any de minimis expressive value that may be found in

---

[3] As a preliminary matter, we reject the State's contention that Brock lacks standing to challenge the statute's constitutionality. Brock argues that the trial court construed the statute in a manner that violated *his* constitutional rights, and he therefore has standing to argue that the statute is overbroad as applied to him. *See Brown v. McClennen*, 239 Ariz. 521, 526 ¶ 19 (2016).

possessing sexually explicit images of children, the First Amendment does not protect child pornography. *Id*. For that reason, the State may criminalize possession of "works that visually depict sexual conduct by children" as long as it "adequately define[s]" the proscribed material. *Ferber*, 458 U.S. at 764; *State v. Hazlett*, 205 Ariz. 523, 527 ¶ 11 (App. 2003) ("[A] state can penalize conduct relating to [nude images of children] without meeting the more exacting standard for obscenity because the material involves actual children actually participating in the acts depicted. The crime is the abuse of the children.").

¶12 Brock contends that A.R.S. § 13–3553 is overbroad, both on its face and as applied to him. First, he asserts the statute proscribes not only child pornography, but the possession of images depicting "merely nude" minors, which he claims are constitutionally protected expression. Employing the same reasoning, he then argues that applying the statute to criminalize his possession of Exhibit 19 impinges on his First Amendment rights because it depicts the victim's pubic region, rather than her genitals, and displays no overt sexual activity.

¶13 We review statutory interpretation de novo. *State v. Burbey*, 243 Ariz. 145, 146 ¶ 5 (2017). In construing a statute, this Court's primary purpose is to effectuate the Legislature's intent. *State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 100 ¶ 8 (2014). "To determine a statute's meaning, we look first to its text[,]" *Burbey*, 243 Ariz. at 147 ¶ 7, and construe statutes that "relate to the same subject matter or have the same general purpose as one another" as though they constitute one law, *State v. Gamez*, 227 Ariz. 445, 449 ¶ 27 (App. 2011). "When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends." *Burbey*, 243 Ariz. at 147 ¶ 7.

¶14 Contrary to Brock's contentions, A.R.S. § 13–3553 does not criminalize conduct involving "merely nude" images of minors. The statute prohibits, among other things, the knowing possession of "any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13–3553(A)(2). "Exploitive exhibition" means "the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer." A.R.S. § 13–3551(5). The statutory definition of "exploitive exhibition" substantially circumscribes A.R.S. § 13–3553's scope, excluding nude images of minors that are created for non-sexual purposes. *See Hazlett*, 205 Ariz. at 531 ¶ 27. Because the challenged statute does not constrain protected expression and a person does not commit sexual exploitation of a minor unless he or she possesses a nude image of a minor that was created for the purpose of sexual stimulation, A.R.S. § 13–3553 is not overbroad.

6

**¶15**        Nor is the statute unconstitutional as applied in Brock's case. The State presented evidence that Brock captured a screenshot from his computer showing both an image that clearly and directly focused on the victim's pubic region and his own reaction to that image. Although the screenshot does not expressly depict any sexual activity, Brock and the victim indisputably engaged in an online sexual relationship. Viewed within this context, a jury could have reasonably found that the victim webcast the image at issue and that he recorded it, for the purpose of his sexual stimulation. Indeed, Brock saved the image in a folder he named "[Victim]-Sexy." Given these facts, Brock has failed to demonstrate that the statute is unconstitutionally overbroad as applied to him. Therefore, the trial court did not err in denying the motion to dismiss the count of sexual exploitation of a minor.

## 2. Denial of Requested Jury Instruction

**¶16**        Brock next contends that the trial court erroneously denied his requested jury instruction regarding "mere nudity." We review a trial court's denial of a requested jury instruction for an abuse of discretion, deferring to the court's evaluation of the evidence, *State v. Wall*, 212 Ariz. 1, 3, 5 ¶¶ 12, 23 (2006), and will not reverse a court's "refusal unless the defendant suffered prejudice as a result," *State v. Garfield*, 208 Ariz. 275, 278 ¶ 11 (App. 2004). A party is entitled to a jury instruction on any theory the evidence reasonably supports, *State v. Moody*, 208 Ariz. 424, 467 ¶ 197 (2004), but a court does not err by refusing to give a jury instruction that "does not fit the facts of the particular case, or is adequately covered by the other instructions," *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997); *see also State v. Mott*, 187 Ariz. 536, 546 (1997) ("A trial court is not required to give a proposed instruction when its substance is adequately covered by other instructions.").

**¶17**        We review de novo whether instructions accurately and adequately state the law. *State v. Fierro*, 220 Ariz. 337, 338 ¶ 4 (App. 2008). We review the instructions in their entirety and will not reverse a jury verdict based on an erroneous instruction unless the instructions, taken as a whole, could reasonably mislead a jury. *State v. Hoskins*, 199 Ariz. 127, 145 ¶ 75 (2000); *State v. Gallegos*, 178 Ariz. 1, 10 (1994). If a jury instruction is "substantially free from error," the defendant generally suffers no prejudice. *Gallegos*, 178 Ariz. at 10 (internal quotation omitted).

**¶18**        Before trial, Brock submitted his requested jury instructions, which included the following "special instruction" on exploitive exhibition:

"Exploitive exhibition" means the lewd exhibition of the genitals or pubic areas of any person. "Lewd" connotes sexual suggestiveness, sexual activity, sexually explicit situations, hard core pornography, and material that is the product of sexual abuse. The following factors, and any other factors you determine are relevant, may be considered by you in deciding whether the photograph in this case involves the lewd exhibition of the genitals or pubic area:

1.  Whether the focal point of the picture is on the minor's genitals or pubic area. Merely because the picture shows the genitals does not necessarily mean that the genitals are the focus of the photograph;

2.  Whether the setting is sexually suggestive. For example, in a place or pose generally associated with sexual activity;

3.  Whether the minor is depicted in an unnatural pose, considering the age of the minor;

4.  Whether the minor was fully or partially clothed, or nude;

5.  Whether the picture suggests sexual coyness or a willingness to engage in sexual activity. Sexual coyness is an expression outside the minor's range of experience;

6.  Whether the picture is intended or designed to elicit a sexual response from the viewer. You should not focus on the actual effect of the photograph on the viewer, but instead on the intended effect on the viewer;

7.  Whether the picture portrays the minor as a sexual object;

8.  Whether the photograph contains a caption, title or name and, if so, the nature of such caption, title or name.

A visual depiction need not involve all of these factors in order to be a lewd exhibition, but they are factors you may consider. No single factor should be given undue weight. More than one factor must be present in order to establish lewdness. The weight or lack of weight which you may give to any one of these factors is for you to decide. You may not determine the picture to be lewd merely because it depicts nudity. Mere nudity is not equivalent to lewdness or to sexual

activity. You may not determine the picture to be lewd because you do not like it or because you find it to be in bad taste. The determination should be made based on the overall content of the visual depiction, taking into account the age of the minor.

During the settling of the final jury instructions, defense counsel urged the court to give his requested instruction on exploitive exhibition to remedy what counsel argued were the "unconstitutional dimensions" of A.R.S. § 13–3553. In its final instructions to the jury, the trial court set forth the statutory elements of sexual exploitation of a minor and provided a definition of "exploitive exhibition" as follows:

The crime of sexual exploitation of a minor requires proof that the Defendant knowingly:

Possessed any visual depiction, in which a minor was engaged in exploitive exhibition, or other sexual conduct.

"Visual depiction" includes each visual image that is contained in an undeveloped film, videotape or photograph or data stored in any form, and that is capable of conversion into a visual image.

"Exploitive exhibition" means the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer.

The following factors may be considered by you:

1) whether the focal point of the pictures is on the child's genitals, pubic or rectal area;

2) whether the setting is sexually suggestive;

3) whether the child is depicted in an unnatural pose, considering the age of the child;

4) whether the child was clothed or nude;

5) whether the pictures suggest a willingness to engage in sexual activity;

6) whether the pictures are intended or designed to elicit a sexual response from the viewer;

7) whether the pictures portray the child as a sexual object.

¶19      Viewed in its entirety, the trial court's instruction on sexual exploitation of a minor adequately and accurately reflected the law. The instruction identified all elements of the offense, included a definition of "exploitive exhibition" that tracked A.R.S. § 13–3551(5), and incorporated the factors that Brock had requested as discussed in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). *See State v. Rodriguez*, 192 Ariz. 58, 61 ¶ 16 (1998) (holding a trial court need not give every specific instruction requested by the defense: "the test is whether the [given] instructions adequately set forth the law applicable to the case").

¶20      Although Brock's proposed instruction more directly stated that possession of a "merely nude" image of a minor does not constitute sexual exploitation of a minor, the court's instruction clearly informed the jurors that they could convict Brock only if the State proved that the image was created for a sexual purpose. Moreover, the court's instruction did not preclude Brock from arguing that Exhibit 19 was merely a nude photo and not child pornography. Indeed, defense counsel repeatedly made that argument during closing argument. Therefore, the trial court did not err by instructing the jury or abuse its discretion by denying, in part, Brock's special "exploitive exhibition" instruction. *See Com. v. Sullivan*, 972 N.E.2d 476, 488 (Mass. App. Ct. 2012) (trial court did not err in refusing to give a "mere nudity" instruction because the given instructions tracked the statutory requirements and the *Dost* factors).

### 3. Denial of Motion for Judgment of Acquittal

¶21      Brock asserts that the trial court applied an incorrect legal standard in denying his motion for judgment of acquittal. We generally review de novo a trial court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). Because Brock did not object to the standard of review the court applied at trial, however, we review his appellate claim only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018).

¶22      When considering a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562 ¶ 16 (internal quotation omitted). In reviewing the sufficiency of the evidence, we compare the evidence "against the statutorily required elements of the offense[,]" *State v. Pena*, 209 Ariz. 503, 505 ¶ 8 (App. 2005),

and neither reweigh conflicting evidence nor assess the credibility of witnesses, *see State v. Buccheri-Bianca*, 233 Ariz. 324, 334 ¶ 38 (App. 2013). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial, *West*, 226 Ariz. at 562 ¶ 16, and a judgment of acquittal is appropriate only when "there is no substantial evidence to support a conviction," Ariz. R. Crim. P. 20(a).

¶23 Contrary to Brock's contention, the trial court explicitly applied the correct legal standard when it stated on the record that it evaluated the sufficiency of the evidence by viewing that evidence in the light most favorable to the prosecution. Nonetheless, to the extent Brock arguably challenges the court's denial of his motion for judgment of acquittal more generally, the remaining question is whether sufficient evidence existed to support his convictions for child molestation, sexual exploitation of a minor, and possession of drug paraphernalia.

¶24 Child molestation requires proof that a person "intentionally or knowingly engag[ed] in or caus[ed] a person to engage in sexual contact . . . with a child who is under fifteen years of age." A.R.S. § 13–1410(A). "Sexual contact" is "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such conduct." A.R.S. § 13–1401(A)(3)(a). At trial, the victim testified that although she and Brock had never met, Brock had introduced a sexual component to their online relationship by causing her to engage in frequent masturbatory conduct and responding with threats when she attempted to end it. Viewing the record in its entirety, substantial evidence existed from which a reasonable jury could find that Brock intentionally caused the minor victim to engage in sexual contact.

¶25 A person commits sexual exploitation of a minor by, as relevant here, knowingly possessing "any visual depiction" of a minor's genital, pubic, or rectal region "for the purpose of sexual stimulation of the viewer." A.R.S. §§ 13–3551(5), –3553. In this case, police officers seized numerous nude images of the minor victim from Brock's electronic devices, including Exhibit 19, as discussed above. Given the image, the victim's testimony about her online sexual activity with Brock and Brock's own placement of the image in a folder titled "[Victim]-Sexy," substantial evidence existed from which a reasonable jury could find that Brock knowingly possessed an image of the victim engaged in exploitive exhibition.

¶26        A person commits possession of drug paraphernalia by possessing with an intent to use, any items that "introduce into the human body a [proscribed] drug[.]" A.R.S. § 13–3415(A). At trial, an officer testified that in the course of executing a search warrant on Brock's home, he seized multiple pipes and bongs as well as a substance that he recognized as marijuana. On this record, substantial evidence existed from which a reasonable jury could find that Brock possessed pipes and bongs with the intent to use marijuana. Therefore, the trial court did not err when it denied Brock's motion for judgment of acquittal.[4]

### 4. Imposition of Concurrent Sentences

¶27        The State argues in its appeal that the trial court misconstrued A.R.S. § 13–705(M) to allow concurrent, rather than consecutive, sentences for Brock's two convictions of child molestation, dangerous crimes against children. "The failure to impose a sentence in conformity with mandatory sentencing statutes makes the resulting sentence illegal." *State v. Carbajal*, 184 Ariz. 117, 118 (App. 1995). Whether the trial court correctly construed the sentencing statute is a question of law we review de novo. *State ex rel. Polk v. Campbell*, 239 Ariz. 405, 406 ¶ 4 (2016).

¶28        The statutes proscribing child molestation, A.R.S. § 13–1410, and sexual exploitation of a minor, A.R.S. § 13–3553, provide that offenses involving a minor victim under 15 years of age shall be punished as dangerous crimes against children pursuant to A.R.S. § 13–705. A.R.S. § 13–1410(B); A.R.S. § 13–3553(C). Subsection (M) of A.R.S. § 13–705 sets forth the circumstances that determine when sentences for dangerous crimes against children may be imposed concurrently or consecutively with sentences for other convictions:

> The sentence imposed on a person by the court for a dangerous crime against children under subsection D of this section involving child molestation or sexual abuse pursuant to subsection F of this section may be served concurrently with other sentences if the offense involved only one victim. The sentence imposed on a person for any other dangerous crime against children in the first or second degree shall be

---

[4]        Brock also requests that this Court search the entire record for fundamental error. We need not do so, however, because "[w]hen an advocate's brief has been filed on behalf of a defendant, we *presume* that counsel has raised all arguably meritorious issues[.]" *State v. Scott*, 187 Ariz. 474, 478 (App. 1996).

consecutive to any other sentence imposed on the person at any time, including child molestation and sexual abuse of the same victim.

¶29        Subsection (M)'s language is clear. The first sentence provides that if a defendant is convicted of child molestation, sentenced under A.R.S. § 13–705(D), or sexual abuse, sentenced under A.R.S. § 13–705(F), the court may make the sentences imposed for those offenses concurrent with sentences for other offenses the defendant was convicted of "if the offense involved only one victim." The second sentence of Subsection (M) limits the application of the first sentence: The sentence imposed on a person "for any other dangerous crime against children in the first or second degree" shall be consecutive "to any other sentence imposed on the person at any time, *including child molestation and sexual abuse of the same victim.*" (Emphasis added.) So, if a defendant is convicted of child molestation or sexual abuse, dangerous crimes against children, the court has the discretion to make the sentences for those offenses concurrent with the sentences for any other offenses if they involved the same victim. However, if the defendant is convicted of any other dangerous crime against children in the first or second degree, the sentence for that conviction must be consecutive to any other sentence, *even if the offense is child molestation or sexual abuse against the same victim.*

¶30        This reading of the statute is consistent with earlier decisions from this Court and the Arizona Supreme Court. In *State v. Tsinnijinnie*, this Court considered whether A.R.S. § 13–604(K) — the predecessor to § 13-705(M) and worded substantially similarly to it — required the trial court to impose consecutive sentences for convictions for sexual assault and molestation of the same victim on different occasions. 206 Ariz. 477, 478 ¶ 6 (App. 2003). This Court held that the sentences should have been consecutive to each other because

> [w]hen the two sentences of subsection (K) are considered together, the sentencing discretion granted to the trial court by the first sentence is limited by the second sentence. If a defendant is convicted of child molestation or sexual abuse along with another offense that is not a dangerous crime against children, the trial court has discretion to order that the sentences be served concurrently if only one victim is involved. If, however, a defendant is convicted of any "other" dangerous crime against children, the sentence for each such offense must be served consecutively to any other sentence imposed.

*Id.* at 479 ¶ 14.[5] The Arizona Supreme Court cited this analysis favorably when it considered whether A.R.S. § 13–116, the statute prohibiting double punishment for single criminal acts, took precedence over Subsection (M)'s requirement that sentences for certain dangerous crimes against children convictions be consecutive to other sentences: "Section 13–705(M) allows a concurrent sentence only for child molestation and sexual abuse involving one victim and when the 'other' crime is not dangerous." *State v. Jones*, 235 Ariz. 501, 503 ¶ 7 n.1 (2014).

¶31        Under a plain reading of Subsection (M)'s language, as recognized in *Tsinnijinnie* and *Jones*, the trial court erred in making Brock's sentence for two separate counts of child molestation concurrent with each other. Brock was convicted of one count of child molestation occurring between June 4, 2012, and August 15, 2012, and one count of child molestation occurring on August 16, 2012. Although the first sentence of Subsection (M) would allow the court to impose concurrent sentences for those convictions because they involve the same victim, the second sentence prohibits that because a sentence imposed for "any other dangerous crime against children in the first or second degree"—as either molestation conviction in this case is—"shall be consecutive to any other sentence imposed on the person at any time, *including child molestation and sexual abuse of the same victim*." (Emphasis added.) Consequently, the trial court erred in imposing concurrent sentences for the molestation convictions.

¶32        Brock nevertheless argues that the trial court had discretion to impose concurrent sentences. He reads Subsection (M) to create a discretionary exception to the general rule of mandatory consecutive sentences for dangerous crimes against children for child molestation or sexual abuse offenses if they were committed against the same victim. He claims that the second child molestation conviction is not "any other dangerous crime against children," but the same crime. He provides no rationale for such an interpretation, other than contending that in *Tsinnijinnie* and *Jones*, the two dangerous crimes against children offenses at issue in each case were different from each other.

¶33        But nothing in Subsection (M)'s plain language supports this interpretation. "Words are to be understood in their ordinary everyday

---

[5]        In its analysis, this Court declined to consider whether the sentence for a separate child molestation conviction involving the same victim should have been consecutive because the State did not challenge that sentence on appeal. *Tsinnijinnie*, 206 Ariz. at 478 ¶ 6 & n.3.

meanings—unless the context indicates they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). The "ordinary everyday meaning" of "other" is "being one (as of two or more) left"; "not the same"; or "more, additional." Webster's Third New International Dictionary 1598 (2002). Because the two offenses were committed on different occasions, the second one is "left" after the first is named or considered; it is not "the same" because it was not committed on the same occasion or by the same act; and it is "additional" to the first. Moreover, Subsection (M) expressly recognizes that its requirement that sentences for "any other dangerous crime against children" must be consecutive applies even to "*child molestation and sexual abuse of the same victim.*" Brock's second conviction for child molestation is thus an "other dangerous crime against children" that requires an imposition of a consecutive sentence.

¶34        *Tsinnijinnie*'s and *Jones*'s interpretations of Subsection (M) and its predecessor also do not support Brock's interpretation. This Court stated in *Tsinnjinnie* that a trial court has discretion to impose concurrent sentences if the defendant was convicted of child molestation or sexual abuse and of an offense that was *not* a dangerous crime against children if the same victim was involved; "[i]f, however, a defendant is convicted of any 'other' dangerous crime against children," the sentence for each offense must be served consecutively. 206 Ariz. at 479 ¶ 14. The supreme court explicitly recognized that only sentences for offenses involving the same victim that are not dangerous crimes against children may be served concurrently with sentences for dangerous crimes against children offenses. *Jones*, 235 Ariz. at 503 ¶ 7 n.1.

¶35        Beyond this, Brock's interpretation is at war with the purpose of dangerous crimes against children statutes. The statutes "were adopted as a response to the increase in the number of sexual offenses reportedly committed against children and constitute an attempt to punish severely those persons who commit such crimes, particularly recidivist child molesters." *State v. Arnoldi*, 176 Ariz. 236, 242 (App. 1993) *overruled on other grounds, Jones*, 235 Ariz. at 503 ¶ 10. Interpreting Subsection (M) to allow concurrent sentences merely because the offenses are both child molestation offenses—without a rationale why two child molestation offenses against the same victim are worthy of less punishment than two different dangerous crimes against children against the same victim—runs counter to that purpose. This is especially true here where Brock engaged in an 18-month webcast sexual relationship with a child under 15 years old. Nothing shows that the nature of Brock's conduct merits less punishment.

¶36 Brock's interpretation also leads to perverse results. Under his interpretation, a person could commit as many acts of molestation as he chose and still receive concurrent sentences for those offenses as long as he molested the same victim. He would risk the increased punishment of consecutive sentences only if he committed a different dangerous crime against children offense against the same victim or chose a new victim. The result would be that two people who committed the same number of dangerous crimes against children would receive different punishments depending on whether they chose one or multiple victims or committed different dangerous crimes against children against the same victim. Such a sentencing scheme would be senseless, especially given the purpose of the dangerous crimes against children statute, to increase the punishment on recidivist child molesters. *Arnoldi*, 176 Ariz. at 242.

¶37 The supreme court addressed an analogous issue in *State v. Noble*, 152 Ariz. 284 (1987). There, a defendant argued that a particular sentencing statute required the imposition of concurrent sentences for convictions for offenses committed against the same victim on the same occasion. *Id.* at 288. The court recognized that such an interpretation would allow persons who committed the same number of offenses against a victim to receive a different punishment depending on whether the crimes were committed on the same occasion. *Id.* Such a reading, the court found, would send a message that

> [i]f you must yield to temptation, purge yourself of all criminal tendencies "on the same occasion" and receive only concurrent sentences regardless of the number of charges on which you are convicted. We caution you against fulfilling your criminal desires on separate occasions. To do so could result in imposition of consecutive sentences.

*Id.* The court chose not to send that message. *Id.* Likewise, interpreting Subsection (M) as Brock suggests would send a message that persons who commit child molestation or sexual abuse may receive less punishment if they choose one victim to attack multiple times than if they choose multiple victims. That is not what the Legislature intended in enacting Subsection (M). We reject Brock's interpretation.

¶38 The dissent, however, agrees with Brock's interpretation. It reasons that because the first sentence of Subsection (M) specifically provides that sentences for child molestation and sexual abuse may be served concurrently with other sentences for offenses against the same victim, the limitation in the second sentence that a sentence for "any other

dangerous crime against children" must be served consecutively to "any other sentence" imposed necessarily excludes sentences for child molestation or sexual abuse and applies only to sentences for dangerous crimes against children not mentioned in the first sentence. *Infra* ¶¶ 48–50.

¶39        But such a reading is unjustified. Simply because the first sentence of Subsection (M) allows for concurrent sentences when a defendant has committed other offenses against a victim in addition to child molestation or sexual abuse does not exempt those offenses from the limitation of the second sentence that a sentence for "any other dangerous crime against children" must be consecutive to any other sentence imposed on the defendant. Nothing in the text of the second sentence compels such an interpretation.

¶40        More important, the consideration of the entire text of second sentence defeats such an interpretation. After providing that sentences for "any other dangerous crime against children" must be consecutive to any other sentence imposed, the second sentence appends "including child molestation and sexual abuse of the same victim." Thus, contrary to the dissent's reading, the text of the second sentence of Subsection (M) specifically includes other child molestation and sexual abuse offenses against the same victim within its ambit. The dissent's reading of the sentence makes the final clause of the second sentence superfluous, violating a "cardinal principle of statutory interpretation." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019); *see also* Scalia & Garner, *Reading Law*, 174 ("Whenever a reading arbitrarily ignores linguistic components or inadequately accounts for them, the reading may be presumed improbable.") (citation and footnote omitted).

¶41        The dissent also fails to identify a reason that the Legislature would intend to exclude from the requirement of consecutive sentences multiple convictions for child molestation or sexual abuse against the same victim. The dissent calls "unwise" the consideration of the Legislature's intent and the effects of interpreting Subsection (M) as Brock and the dissent suggests. *Infra* ¶ 61. But far from unwise, when interpreting statutes, our goal is to effectuate legislative intent. *Harris*, 237 Ariz. at 100 ¶ 8. And a recognized canon of construction is that an interpretation that furthers a statute's purpose is favored over one that does not. Scalia & Garner, *Reading Law*, 56. Although we need not go beyond Subsection (M)'s plain language to determine that multiple convictions for child molestation or sexual abuse of the same victim require consecutive sentences, *see Dignity Health v. Farmers Ins. Co. of Ariz.*, 247 Ariz. 39, 42 ¶ 7 (App. 2019) (recognizing that consideration of statute's purpose and effects is unnecessary if its language

is clear), the fact that our interpretation furthers the Legislature's intent and avoids Brock's and the dissent's perverse results confirms the validity of our reading of the plain language.

**¶42**     The dissent also relies extensively on *State v. Supinger*, 190 Ariz. 326 (App. 1997), which interpreted A.R.S. § 13–604.01(I) (1996), an apparent ancestor to Subsection (M). *Infra* ¶¶ 53–59. But *Supinger* has little value today. First, A.R.S. § 13–604.01(I) is different from Subsection (M). Section 13–604(I) provided that the sentence imposed on a person "for a dangerous crime against children . . . involving child molestation . . . shall be consecutive to any other sentence imposed on the person . . . *if the offense involved more than one victim*. (Emphasis added.) Because § 13–604.01(I) called for consecutive sentences when the child molestation offense involved more than one victim, this Court held that concurrent sentences were allowed when child molestation involved only one victim. *Supinger*, 190 Ariz. at 330. Subsection (M), in contrast, imposes consecutive sentences when two dangerous crimes against children involve the same victim, including child molestation. The differing language between the two statutes makes the applicability of *Supinger*'s analysis to Subsection (M) dubious.

**¶43**     Second, even if *Supinger*'s analysis of the ancestor statute was correct, it means little in the face of *Tsinnijinnie* and *Jones*. The dissent claims that *Tsinnijinnie* and *Jones* do not squarely address the issue here, but *Tsinnijinnie* interpreted the substantially identical statute the way that we interpret Subsection (M) today, 206 Ariz. at 47 ¶ 14, and our supreme court cited *Tsinnijinnie* favorably in noting that Subsection (M) allows a concurrent sentence for child molestation when the "other" crime is not a dangerous crime against children, *Jones*, 235 Ariz. at 503 ¶ 7 n.1. If the supreme court, upon further reflection, determines that its statement should not be read as we have read it today, it will certainly say so. *See, e.g., Allen v. Sanders*, 240 Ariz. 569, 574 ¶¶ 26–27 (2016) (Bolick, J., concurring) (noting that the supreme court, in addressing "categorical language" from an earlier decision, "today walks back its broad interpretation" of the rule of procedure at issue in that case). Until then, we are bound to follow our supreme court. *State v. Lucero*, 223 Ariz. 129, 137 ¶ 24 (App. 2009).

**¶44**     For these reasons, we are, with respect, unpersuaded by the dissent's analysis. We conclude that because the second child molestation offense in this case constitutes another dangerous crime against children, the trial court did not have discretion to give a concurrent sentence under Subsection (M). Because we do not know how the trial court would have sentenced Brock had it known that it did not have discretion to impose

concurrent sentences for the child molestation offenses under Subsection (M), we remand for resentencing. *See State v. Stroud*, 209 Ariz. 410, 414 ¶ 21 (2005) ("When a trial court labors under a misunderstanding of the sentencing law . . . that portion of the sentence . . . should be set aside and the matter remanded for sentencing.").

**CONCLUSION**

¶45 For the foregoing reasons, we affirm Brock's convictions and sentences in part but remand for resentencing of his child-molestation convictions because those two sentences must run consecutively.

**J O H N S E N**, concurring in part, dissenting in part

¶46 I agree with ¶¶ 3–26 of the majority's opinion affirming Brock's convictions. I disagree, however, with the majority's conclusion that the trial court lacked discretion to impose concurrent sentences for his two child-molestation convictions. *Supra* ¶ 2.

¶47 There is no question that, in the usual case, the first sentence of A.R.S. § 13–705(M) allows a court to impose a concurrent sentence for a conviction of child molestation when, as here, a defendant is convicted of multiple offenses involving "only one victim."[6] Likewise, under the second sentence of that provision, there is no question that when a defendant is convicted of child molestation and a dangerous crime against children other than child molestation or sexual abuse, the court must impose a consecutive sentence. *See State v. Tsinnijinnie*, 206 Ariz. 477, 479 ¶ 15 (App. 2003) (sentence for sexual assault of a minor must be consecutive to sentence for sexual molestation of a minor). The issue on which I disagree with the majority is whether the second sentence of subsection (M) requires consecutive sentences when a defendant is convicted of two child-molestation charges involving the same victim.

¶48 The majority concludes, *supra* ¶ 31, that the superior court erred in sentencing Brock because his second child-molestation conviction constituted "any other dangerous crime against children" that required a

---

[6] Section 13–705(M) mandates special treatment of the two dangerous crimes against children of child molestation and sexual abuse. For simplicity, in the discussion that follows I sometimes will address the child-molestation convictions that are at issue here without referring to sexual abuse even though the statute treats the two crimes the same.

consecutive sentence. A.R.S. § 13–705(M). I construe the two sentences of subsection (M) together and come to a different conclusion. I believe the reference in the second sentence of subsection (M) to "any other dangerous crime against children" means any crime other than the crimes of "child molestation or sexual abuse" that are referenced in the first sentence of the provision. As applied, therefore, I would affirm the concurrent sentences the court imposed for Brock's two child-molestation convictions because both "involved only one victim." *Id.*

**¶49**       As the majority states, *supra* ¶ 27, when we interpret a statute, we first carefully consider its text. *See State v. Lee*, 236 Ariz. 377, 383 ¶ 16 (App. 2014). The statute here defines 23 distinct "[d]angerous crime[s] against children," A.R.S. § 13–705(Q), then sets out special sentencing rules to be applied to persons convicted of such crimes. The focus of the first sentence of the relevant subsection here, § 13–705(M), is the prison sentence to be imposed on a person convicted of child molestation or sexual abuse as a dangerous crime against children. The second sentence of the subsection concerns the sentence imposed "for any other dangerous crime against children." Notwithstanding the majority's lengthy discussion of the meaning of "other," *supra* ¶¶ 33–34, it seems plain to me that the reference to "*any other dangerous crime against children*" in the second sentence of the provision must mean any of the 23 dangerous crimes against children *other* than the crimes of child molestation or sexual abuse referenced in the first sentence. A.R.S. § 13–705(M) (emphasis added).

**¶50**       To explain, the first sentence of subsection (M) introduces the subject of the provision by referring to a "sentence imposed on a person . . . for a dangerous crime against children . . . involving child molestation or sexual abuse." The second sentence echoes the language of the first sentence by referring to "any *other* dangerous crime against children." *Id.* (emphasis added). The drafters did not refer in the second sentence to "any second (or other) *conviction* of a dangerous crime against children," nor did they choose to reference a "second (or other) *offense* under this statute." Applying the language of the statute as written, and reading the two sentences of (M) together, the term "other" limits the scope of qualifying dangerous crimes against children to those different or distinct from child molestation or sexual abuse, so that a second conviction of child molestation is *not* "any *other* dangerous crime against children" that would require a consecutive sentence. *See Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 88 ¶ 17 (2019) (explaining under presumption of consistent-usage canon that "a word or phrase is presumed to bear the same meaning throughout a text" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012))).

¶51        The majority states that its interpretation of the statute is supported by the final clause of subsection (M). *Supra* ¶ 29. I disagree. The reference to "child molestation and sexual abuse of the same victim" in that sentence only makes clear the indisputable proposition that when a defendant is convicted of two dangerous crimes against children—child molestation and "any other dangerous crime against children"—the court must impose consecutive sentences.

¶52        Contrary to the majority's contention, *supra* ¶ 40, my interpretation does not render the final clause of the second sentence superfluous. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (courts should "give meaning, if possible, to every word and provision [in a statute] so that no word or provision is rendered superfluous"). The fact is that the majority accords the phrase no more meaning than I do. Under either interpretation, the final phrase clarifies what comes before.  My view is that the most logical reading of the statute is that the final phrase modifies the penultimate phrase ("any other sentence imposed on the person at any time")  and clarifies that when a defendant is sentenced on two convictions, the first being a dangerous crime against children other than child molestation or sexual abuse, and the second being any crime against children—*including* child molestation and sexual abuse—the sentences must be consecutive.[7]

¶53        Our decision in *State v. Supinger*, 190 Ariz. 326 (App. 1997), further supports my construction of the statute. In that case, we interpreted A.R.S. § 13–604.01(I) (1996), the predecessor to A.R.S. § 13–705(M). The former statute provided:

> The sentence imposed on a person by the court for a dangerous crime against children in the first or second degree shall be consecutive to any other sentence imposed on the person at any time except that the sentence imposed on a person by the court for a dangerous crime against children under subsection B of this section involving child molestation or sexual abuse pursuant to subsection C of this section shall

---

[7]        Thus, the majority and I both view the final clause as explaining or clarifying "any other." *See* Scalia & Garner, *supra*, at 176–77 (explaining the surplusage canon "cannot always be dispositive" because "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach").

be consecutive to any other sentence imposed on the person
at any time if the offense involved more than one victim.

A.R.S. § 13–604.01(I) (1996).

**¶54**      *Supinger* described this language as creating a "general rule" (the first clause) and "an exception" (the second clause). 190 Ariz. at 330. The general rule required consecutive sentences for all dangerous crimes against children; the exception allowed concurrent sentences for the crimes of child molestation and sexual abuse involving a single victim. *Id.* The defendant in that case was convicted of child molestation and sexual conduct with a minor, both dangerous crimes against children. *Id.* We held the exception did not apply because the rule mandated that the sexual-conduct sentence "be served consecutive *to any other sentence*." *Id.* Allowing the exception to prevail (i.e., allowing the sexual-molestation sentence to run concurrently with the sexual-conduct sentence) "would nullify the requirement for a consecutive sentence on the sexual conduct." *Id.*

**¶55**      In summarizing its reasoning, *Supinger* addressed the issue now presented:

> We therefore conclude that the exception . . . applies only when two or more sentences are within the exception, or when one of the sentences is not a dangerous crime against children. For example, a sentence for child molestation . . . *may be served concurrent with a sentence for another count of child molestation*, which also falls within the exception, or a drug offense not involving a minor, which is not a dangerous crime against children. Such a sentence may not, however, be served concurrently with a sentence for another dangerous crime against children that does not fall within the exception.

*Id.* (emphasis added).[8]

**¶56**      As noted, the version of the statute that *Supinger* analyzed has been amended. *See* 1997 Ariz. Sess. Laws, ch. 179, § 1 (1st Reg. Sess.). But

---

[8]    In a footnote, we restated the same point: "We note, however, that if a defendant has multiple convictions for dangerous crimes against children and more than one falls within the exception, those sentences falling within the exception may be concurrent *with each other* but must be consecutive to any other sentence(s) for a dangerous crime against children not falling within the exception." 190 Ariz. at 331 n.3.

close analysis shows that the operative language of the older statute is virtually identical to that of current § 13–705(M). In the first place, setting aside the exceptions for child molestation and sexual abuse, both versions of the statute use identical language to state that when a person is convicted of any dangerous crime against children, the resulting sentence must be "consecutive to any other sentence imposed on the person at any time." A.R.S. § 13–705(M); A.R.S. § 13–604.01(I) (1996).

¶57 Further, under both versions of the statute, the court must impose consecutive sentences when a person is convicted of child molestation or sexual abuse and "any other dangerous crime against children." A.R.S. § 13–705(M) ("sentence imposed on a person for any other dangerous crime against children . . . shall be consecutive to any other sentence imposed on the person at any time, including child molestation and sexual abuse of the same victim"); *see Supinger*, 190 Ariz. at 331 n.3 ("[I]f a defendant has multiple convictions for dangerous crimes against children . . . , those sentences falling within the exception . . . must be consecutive to any other sentence(s) for a dangerous crime against children not falling within the exception.").

¶58 As for child molestation and other crimes involving the same victim, the prior version of the statute stated that "the sentence imposed . . . shall be consecutive to *any other* sentence imposed on the person at any time if the offense involved more than one victim." A.R.S. § 13–604.01(I) (1996) (emphasis added). We held in *Supinger* that the implication of that provision was that a person convicted of child molestation could be sentenced to a concurrent sentence if the "any other" offense involved the same child. 190 Ariz. at 330. After the 1997 amendment, current § 13–705(M) uses like language in expressly stating the implication we drew in *Supinger*: "The sentence imposed on a person [convicted of child molestation] may be served concurrently *with other sentences if the offense involved* only one victim." (Emphasis added.)

¶59 Given the similarity of the two statutes, and in the absence of any indication the legislature intended the revision to effect a substantive change, I believe that when we construe the current version of § 13–705(M), we must be guided by what we said about its predecessor in *Supinger*.[9]

---

[9] There can be no contention that the amendment was in response to our decision in *Supinger*. We issued our decision in that case on July 29, 1997, a few months *after* the legislature amended the sentencing provision

**¶60**          In coming to the opposite conclusion about how to construe § 13–705(M), the majority relies on *State v. Jones*, 235 Ariz. 501 (2014), and *Tsinnijinnie*, *supra* ¶¶ 30–31, 34, but neither case addresses the question presented here. In *Jones*, our supreme court held that the consecutive-sentence mandate in § 13–705(M) prevailed over A.R.S. § 13–116 (2020), which generally requires concurrent sentences when multiple convictions result from a single act or omission. *Jones*, 235 Ariz. at 503 ¶¶ 8, 11. The majority cites a footnote in *Jones* that described § 13–705(M) as allowing "a concurrent sentence only for child molestation and sexual abuse involving one victim and when the 'other' crime is not dangerous." 235 Ariz. at 194 n.1; *supra* ¶ 30. But I do not understand that footnote to say anything more or less than what subsection (M) itself says ("sentence imposed on a person for any other dangerous crime against children in the first or second degree shall be consecutive to any other sentence"). And *Tsinnijinnie*, the only case *Jones* cited in its description of § 13–705(M) in that footnote, specifically left open the issue we now address. 206 Ariz. at 477–78 ¶¶ 2, 6 n.3 (declining to decide whether concurrent sentences could be imposed under current subsection (M) for two child-molestation convictions).

**¶61**          Turning to the majority's other explanations, I suggest that its reliance on the purpose of § 13–705 is unwise. *Supra* ¶¶ 35–36. I do not question that the purpose of the statute is to protect children by punishing dangerous crimes against children more severely than other crimes. But that does not mean that we must always construe the statute to require the more severe of two possible punishments. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be

that is now codified as A.R.S. § 13–705(M). *See Supinger*, 190 Ariz. 326; *see also* 1997 Ariz. Sess. Laws, ch. 179 (1st Reg. Sess.). Further, as we noted in *Tsinnijinnie*, "[t]he legislative history is inconclusive regarding the purpose of the 1997 amendment." 206 Ariz. at 479 ¶ 11 n.4; *see also* Ariz. State Senate Fact Sheet for H.B. 2016, 43d Leg., 1st Reg. Sess. (Mar. 24, 1997) (stating the amendment "[c]larifies sentencing language involving sexual child molestation and sexual abuse of the same victim"). In short, we have been presented with neither argument, citation nor logic for the proposition that the legislature intended a substantive change when it enacted the 1997 amendment. *See State v. Sweet*, 143 Ariz. 266, 271 (1985) (contrasting legislative decision to *change* an existing statute from legislative decision to merely *clarify* the statute); *Clarify*, Random House Webster's Unabridged Dictionary 380 (2001) ("to make (an idea, statement, etc.) clear or intelligible; to free from ambiguity"); *see also, e.g.*, *In re Marriage of Waldren*, 217 Ariz. 173, 176 ¶ 15 (2007) (citing legislative fact sheet in concluding amendment was not intended to change statute but merely to clarify it).

sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987).

¶62        The majority questions why the statute might treat two child-molestation convictions differently than convictions of any other two dangerous crimes against children. *See supra* ¶ 35. Respectfully, we have no mandate to divine "a reason" the legislature might have had for enacting a particular provision. *Supra* ¶ 41; *see Hughes v. Jorgenson*, 203 Ariz. 71, 73 ¶ 11 n.5 (2002) ("We cannot be asked to guess at the legislature's subjective intent. Stated succinctly, we must be able to reach our conclusion by analysis of the statute instead of by psychoanalysis of the legislature." (quotation omitted)). There is no dispute that the legislature has chosen to treat sentencing for child-molestation convictions differently; the only issue is the extent to which it has done so. As for the so-called perverse result of my construction of the statute (i.e., concurrent sentences possible for any number of child-molestation convictions committed against the same victim), *supra* ¶¶ 36, 41, the statute allows the sentencing court discretion to impose consecutive sentences in such a case, thereby avoiding the posited result. *See* A.R.S. § 13–705(M). Finally, the majority cites *State v. Noble*, 152 Ariz. 284 (1987), about the "message" a court sends by construing a sentencing statute. *Supra* ¶ 37. *Noble* did not construe § 13–705 and I see no textual analysis in that case that is relevant here.

¶63        For these reasons, although I concur with the majority insofar as it affirms Brock's convictions, I dissent from the majority's decision to remand his two concurrent child-molestation sentences.

